Latoya GREEN, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–01–00226–CR.

Court of Appeals of Texas, Texarkana.

Submitted Oct. 15, 2002.

Decided Nov. 1, 2002.

Rehearing Overruled Dec. 10, 2002.

Eric M. Albritton, Elizabeth L. DeRieux, Albritton Law Firm, Longview, for appellant.

Charles C. Bailey, Titus/Camp County District Attorney, Mount Pleasant, for appellee.

Before MORRISS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

Latoya Green pled guilty to the offense of possession of marihuana in an amount less than 2,000 pounds, but more than fifty pounds. The jury assessed punishment at five years' imprisonment and a fine of $3,000.00. Pursuant to the jury's recommendation, the court suspended the sentence and set Green's community supervision at ten years. On appeal, Green contends the court erred by denying her motion to suppress evidence because the traffic stop was unconstitutional, it exceeded its constitutional duration and scope, and her consent to search was not given freely or voluntarily.

On February 4, 2001, Green was traveling eastbound on Interstate 30 (I–30). At the same time, Officers Dennis McBride and Raymond Haley were working traffic patrol in Titus County. McBride testified he observed Green's vehicle approximately one-half mile behind his car, which was on the shoulder of I–30. There were no other

cars visible at the time the officers observed Green. McBride testified he initiated the traffic stop after the 164–mile marker because Green was driving her vehicle in the left-hand lane, which is reserved for passing. McBride testified a sign indicating the left-hand lane was for passing only was located at the 153–mile marker. Further, McBride testified there was another sign, between the 153–mile marker and the point where Green was stopped, advising slower vehicles to stay in the right-hand lane.

The officers testified that, after initiating the traffic stop, they approached the vehicle and smelled a strong odor of alcohol. McBride testified Green appeared nervous and her hands were visibly shaking. McBride asked Green to exit the vehicle, and he immediately determined Green had not been drinking, but the odor was coming from inside the vehicle. The officers testified alcohol is sometimes used to mask other odors. The officers also noticed the undercarriage and the wheel wells of the vehicle had been recently painted. McBride asked Green if there were any guns, bombs, knives, drugs, or dead bodies in the vehicle and if he had permission to search the vehicle. Green answered "no" to the questions. At that point, McBride returned to the patrol car to retrieve Green's driver's license and criminal information, which revealed Green had been previously arrested for theft. While checking the information, McBride requested a K–9 unit be dispatched to the scene. At the same time, Haley received permission to search Green's purse, and he discovered marihuana residue inside. On arrival of the K–9 unit, Green informed the officers there was something in the trunk they should see and consented to a search of the trunk. As a result of the search, the officers discovered the marihuana that led to Green's arrest.

In her first point of error, Green contends the trial court erred by denying her motion to suppress because the officers did not have reasonable suspicion to effect the traffic stop. The ruling of a trial court on a motion to suppress will not be set aside absent a showing of abuse of discretion. *Maddox v. State,* 682 S.W.2d 563, 564 (Tex.Crim.App.1985); *Jackson v. State,* 968 S.W.2d 495, 498 (Tex.App.-Texarkana 1998, pet. ref'd). On a motion to suppress, the trial court is the sole and exclusive trier of fact and the judge of the credibility of the witnesses, including the weight to be given their testimony. *Allridge v. State,* 850 S.W.2d 471, 493 (Tex. Crim.App.1991). Thus, the trial court is free to believe or disbelieve the testimony of any witness. This Court does not engage in its own factual review. *Braggs v. State,* 951 S.W.2d 877, 880 (Tex.App.-Texarkana 1997, pet. ref'd). Viewing the evidence in the light most favorable to the trial court's ruling, we consider only whether the trial court improperly applied the law to the facts. *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App.1990). If the trial court's findings are supported by the record, this Court is not at liberty to disturb them. *Etheridge v. State,* 903 S.W.2d 1 (Tex.Crim.App.1994).

A police officer may stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion, supported by articulable facts, that the person detained actually is, has been, or soon will be engaged in criminal activity. *Tex. Dep't of Pub. Safety v. Chang,* 994 S.W.2d 875, 877 (Tex.App.-Austin 1999, no pet.). The burden is on the State to demonstrate the reasonableness of the stop. *Id.* If an officer has a reasonable basis for suspecting a person has committed a traffic offense, the officer may legally initiate a traffic stop. *See Garcia v. State,* 827 S.W.2d 937, 944 (Tex.

Crim.App.1992). The United States Supreme Court has held that a traffic stop will be deemed valid as long as a reasonable officer in the same circumstances could have stopped the car for the suspected offense. *Whren v. United States,* 517 U.S. 806, 809, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). The State is not required to show that a traffic offense was actually committed, but only that the officer reasonably believed a violation was in progress. *Valencia v. State,* 820 S.W.2d 397, 400 (Tex.App.-Houston [14th Dist.] 1991, pet. ref'd). Therefore, "[i]n assessing whether the intrusion was reasonable, an objective standard is utilized: would the facts available to the officer at the moment of the seizure or search warrant a man of reasonable caution in the belief that the action taken was appropriate." *Davis v. State,* 947 S.W.2d 240, 243 (Tex.Crim.App. 1997).

For example, in *Texas Department of Public Safety v. Fisher,* 56 S.W.3d 159, 163 (Tex.App.-Dallas 2001, no pet.), the appellant contended the officer did not have the required reasonable suspicion to effect a traffic stop. Specifically, the officer observed Fisher traveling in the left-hand lane going ten miles per hour slower than the posted speed limit. *Id.* at 162. The officer stopped Fisher and subsequently arrested him for driving while intoxicated. *Id.* The Texas Transportation Code requires a driver on a roadway who is moving slower than the normal speed of other vehicles to drive in the right-hand lane, unless the driver is passing or preparing for a left-hand turn. Tex. Transp. Code Ann. § 545.051(b) (Vernon 1999); *Fisher,* 56 S.W.3d at 163. Fisher testified he had moved into the right-hand lane by the time the officer actually stopped his vehicle. *Fisher,* 56 S.W.3d at 163. However, the court reasoned that, while Fisher may have presented conflicting evidence regarding the stop, there was sufficient evidence for the court to determine the stop was based on reasonable suspicion. *Id.*

■■■ In the present case, the State contends Green was in violation of the following statutes:

> If, on a highway having more than one lane with vehicles traveling in the same direction, the Texas Department of Transportation or a local authority places a sign that directs slower traffic to travel in a lane other than the farthest left lane, the sign must read "left lane for passing only."

Tex. Transp. Code Ann. § 544.011 (Vernon Supp.2002).

> The operator of a vehicle or streetcar shall comply with an appliable official traffic control device placed as provided by this subtitle. . . . A provision of this subtitle requiring an official traffic-control device may not be enforced against an alleged violator if at the time and place of the alleged violation the device is not in proper position and sufficiently legible to an ordinary observant person. A provision of this subtitle that does not require an official traffic-control device is effective regardless of whether a device is in place.

Tex. Transp. Code Ann. § 544.004 (Vernon 1999).

Green contends that, at the time of the stop, the "Left Lane for Passing Only" sign was not controlling and the officers were unreasonable in their belief that she was in violation. Specifically, Green argues that the "Slower Traffic Keep Right" sign, located between the "Left Lane for Passing Only" sign and the stop, was controlling and that her conduct was in conformity therewith. However, the officers testified that, in their opinion, a motorist who passes a "Slower Traffic Keep Right" sign after he or she had passed a "Left

Lane for Passing Only" sign would be in violation of the Transportation Code if he or she continued to travel in the left-hand lane. We are thus faced with the question, in light of the facts available to the officers at the time of the stop, taken together with rational inferences from those facts, whether a reasonable officer would conclude Green was in violation of the aforementioned statutes. *Whren,* 517 U.S. at 809, 116 S.Ct. 1769; *Woods v. State,* 970 S.W.2d 770, 773 (Tex.App.-Austin 1998, pet. ref'd).

First, according to the relevant statutory provisions, a motorist, on seeing a traffic control sign directing vehicles to remain in the right-hand lane unless passing another motorist, would be in violation for continuing to travel in the left-hand lane if no other vehicles were in the vicinity. TEX. TRANSP. CODE ANN. §§ 544.004, 544.011; *Baker v. State,* 50 S.W.3d 143, 145 (Tex.App.-Eastland 2001, pet. ref'd) (holding person of ordinary intelligence would know from reading sign, left-hand lane was for passing only and would know when they must move from left-hand lane). The officers testified Green was traveling in the left-hand lane in violation of the above statutes. On the other hand, Green argues that, on seeing the "Slower Traffic Keep Right" sign, she was no longer required to comply with the previous sign and it was unreasonable of the officers to effect the stop based on her conduct. Specifically, Green contends Section 545.051(b) of the Texas Transportation Code sets forth the default rule, which directs slower motorists to travel in the right-hand lane in deference to faster moving traffic. TEX. TRANSP. CODE ANN. § 545.051(b). Further, Green contends the "Slower Traffic Keep Right" sign was intended to supersede the "Left Lane for Passing Only" sign and implement the rule set forth in Section 545.051(b). However, Green has not cited any authority in support of her contention,

and this Court is not persuaded that is the default rule or that the "Slower Traffic Keep Right" sign was intended to convey that message to motorists. In fact, Section 545.051(a) of the Transportation Code directs motorists to travel in the right-hand lane at all times unless certain exceptions apply, none of which are applicable in this case. TEX. TRANSP. CODE ANN. § 545.051(a) (Vernon 1999). Therefore, Green has at best raised some ambiguity as to which provision would prevail in that situation. Again, the applicable inquiry is not whether a law was actually violated, but whether the officer had reasonable suspicion of a violation. *Valencia,* 820 S.W.2d at 400. Like *Fisher,* Green may have presented conflicting evidence regarding the stop, but there is sufficient evidence for this Court to determine the stop was based on reasonable suspicion. In her second point of error, Green contends the duration and scope of the stop exceeded its constitutional limits. Again, the ruling of a trial court on a motion to suppress evidence will not be set aside absent a showing of abuse of discretion. *Maddox,* 682 S.W.2d at 564. Viewing the evidence in the light most favorable to the trial court's ruling, we consider only whether the trial court improperly applied the law to the facts. *Romero,* 800 S.W.2d at 543. If the trial court's findings are supported by the record, this Court is not at liberty to disturb them. *Etheridge,* 903 S.W.2d at 1.

 To determine the reasonableness of an investigative detention under the Fourth Amendment, we apply the guidelines set out by the United States Supreme Court in *Terry v. Ohio:* (1) whether the officer's action was justified at its inception; and (2) whether it was reasonably related in scope to the circumstances that justified the interference initially. *Davis v. State,* 947 S.W.2d 240, 242

(Tex.Crim.App.1997) (citing *Terry v. Ohio,* 392 U.S. 1, 19–20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). A search that is reasonable at its inception may violate the Fourth Amendment by virtue of its excessive intensity and scope. *Davis,* 947 S.W.2d at 243. Under the second guideline, the detention must be no longer than is necessary to satisfy the purpose of the stop. *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). However, when officers are running a computer check, they are entitled to question the offender about things unrelated to the initial stop because it does not extend the length of the stop. On the other hand, if during the course of the initial stop, the officer develops a reasonable suspicion the offender is involved in or is about to be involved in criminal activity, an extended detention is permissible. *Johnson v. State,* 658 S.W.2d 623, 626 (Tex.Crim.App. 1983). The officer is entitled to rely on all of the information obtained during the course of the stop to formulate articulable facts that would justify a continued detention. *Id.*

For example, in *Freeman,* this Court held that the officer was justified in detaining the offender longer than needed to effectuate the purpose of the stop. *Freeman v. State,* 62 S.W.3d 883, 888 (Tex. App.-Texarkana 2001, pet. ref'd). Specifically, Freeman was stopped for following another vehicle too closely. *Id.* at 887. During the stop, the officer approached the driver's side window and asked Freeman to exit the vehicle. *Id.* The officer questioned Freeman about his destination, who rented the car, and the identity of the passenger. *Id.* The officer then approached the passenger's side window and asked the passenger the same questions. *Id.* The passenger's answers were inconsistent with Freeman's, and the officer testified he smelled marihuana inside the vehicle. *Id.* Because the officer elicited the inconsistent answers and smelled the marihuana before the initial stop had concluded, this Court held that the officer had developed articulable facts necessary to continue the detention. *Id.* at 888.

■ Similarly, in the present case, Green contends the initial investigation had concluded before the arrival of the K–9 unit and the officers did not have articulable facts on which to justify her continued detention. However, the officers testified that, on approaching the vehicle, they smelled a strong odor of alcohol and determined it may have been used as a masking agent. Further, the officers testified Green appeared nervous and her hands were visibly shaking. While McBride was checking Green's driver's license and criminal record, Green consented to a search of her purse and Haley found marihuana residue. In *Freeman,* this Court held that, if the officer develops a reasonable suspicion before the initial investigation is completed, a continued detention is justified. *Id.* at 887. In the present case, the officers developed articulable facts before the initial stop had concluded (i.e. before McBride completed checking Green's driver's license and criminal history records); therefore, the officers had reasonable suspicion necessary to continue the detention.

■ In her third point of error, Green contends her consent to search the trunk was not given voluntarily. When the State relies on a consent to search, the burden of proof is on the prosecution to show by clear and convincing evidence the consent was freely and voluntarily given. *Paulus v. State,* 633 S.W.2d 827, 850 (Tex. Crim.App. [Panel Op.] 1981). The prosecution must show the consent given was positive and unequivocal, and there must not be a showing of duress or coercion, actual or implied. *Rovnak v. State,* 990 S.W.2d 863, 872 (Tex.App.-Texarkana 1999, pet. ref'd). If the prosecution does

not show more than mere acquiescence to a show of lawful authority, the burden has not been discharged. *Id.* Further, a reviewing court must look at the totality of the circumstances to determine if the consent was voluntary. *Id.*

■ During the course of the initial traffic stop, McBride asked Green if she had any drugs in the vehicle and if he could conduct a search. Green answered "no" to both questions. However, after obtaining reasonable suspicion that another offense may have been committed, McBride requested that a K–9 unit be dispatched to the scene. On arrival of the K–9 unit, Green told the officers that "what they were looking for was in the trunk." McBride expressly asked Green for her consent to inspect the trunk, and she willingly gave her consent and the keys to the officer. After opening the trunk, the officers found the marihuana in question.

There was no evidence presented that Green was placed under duress in order to obtain her consent. Green was aware of her right to refuse consent, as evidenced by her earlier refusal, and the officers did not threaten to obtain a search warrant or coerce Green in any fashion. Further, the officers would have likely had probable cause to conduct a search without Green's consent given the presence of the K–9 unit.[1] Accordingly, based on the totality of the circumstances, Green's consent was freely and voluntarily given.

Based on the foregoing, Green's motion to suppress was properly denied. We affirm the trial court's judgment.

---

1. Once the dog, which was trained to recognize and identify the location of drugs, alerted to the railing of the pickup truck, the officers had probable cause to search the vehicle. *See Ortiz v. State,* 930 S.W.2d 849, 856 (Tex.App.-Tyler 1996, no pet.).