In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-03-219 CR


____________________



FREDERICK PAUL PETERSON, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 9th District Court


Montgomery County, Texas


Trial Court Cause No. 01-11-06984 CR






MEMORANDUM OPINION


 Frederick Paul Peterson pleaded guilty, pursuant to a plea bargain, to the felony
offense of driving while intoxicated. The trial court placed him on community supervision
for five years. Peterson appeals from the trial court's denial of his motions to suppress and
to quash the indictment. 

 While driving down the highway, Officer Jeter came up behind Peterson's 1989 GMC
pickup. Officer Jeter testified he could see the interior of the pickup, with the help of
headlights of oncoming cars, and observed Peterson was not wearing a seat belt. The pickup
had a tinted rear window. The stop was in May around 7:58 in the evening, and Jeter
testified the sun was still up. Jeter testified he saw the seat belt straps hanging straight down,
and the only reason he stopped Peterson was "for not wearing a seatbelt." Jeter indicated he
did not see Peterson unstrap his seat belt when Peterson exited the pickup. 

 When told the reason for the stop, Peterson emphatically stated he had his seat belt
on. Jeter smelled alcohol on Peterson's breath. After the seat belt discussion, Jeter asked if
Peterson had been drinking. Peterson emphatically said no. Jeter then administered various
field sobriety tests. On the HGN (Horizontal Gaze Nystagmus test), Jeter found four of six
clues -- four being the minimum number of clues for an indication of intoxication. On the 
"divided attention," the ABC, and the one-legged stand tests, Jeter found no "clues." But on
the walk-and-turn test, Jeter noted three clues out of eight, including Peterson's use of his
arms for balance. The final test was the PBT (preliminary breath test) conducted on a
portable machine Jeter carried with him. The result, as displayed by the PBT screen shown
on the video, was .159. Jeter arrested Peterson. At the suppression hearing, Jeter testified
that the advantage of the PBT is that it "afford[s] us the opportunity" "to not make those false
arrests." As Jeter explained, if the PBT test had come back below .[0]8, he would not have
arrested Peterson, but would have given him a written "seat belt ticket and released [him]." 

 Carl Larsen, Peterson's business associate, testified he met Peterson at JW's Grill that
evening. While their vehicles were side-by-side and the men were talking through their
windows, Larsen noticed Peterson had his seat belt on. After Peterson pulled out onto the
highway, Larsen remained in the parking lot. He saw Peterson head south on the highway
and then observed the officer go by at 80 to 90 miles an hour. Larsen said he pulled in
behind the officer, who hit the brakes, slid off the side of the road, and skidded in behind
Peterson's pickup. On cross examination, Larsen indicated the police car's sliding-off-the-road motion does not show up on the video because the video is scratchy at that portion of
the tape. Larsen testified the officer's statement is "totally inaccurate." 

 Cam Cope, an expert witness, testified on Peterson's behalf. Cope had studied the
pickup cab's structure and the seat belt restraint system and then conducted tests to find out
whether a person, driving behind the vehicle and looking through the vehicle's tinted rear
window, could determine the seat belt was not on. If the seat belt straps are visible, "it would
give you an indication that [the seat belt is] in a buckled position." In an unstrapped position,
however, the belt is not visible unless the angle is right. Cope testified that if the window
had no tint and the view of the pickup was from a side-angle, a person could see the belt
suspended on the "B" pillar. Cope also testified the video shows the officer coming from the
rear of Peterson's vehicle at all times. In the various tests conducted with oncoming vehicle
headlights, and with another vehicle shining its lights at the rear of the pickup, Cope testified
he "was not able to see the safety belts in the vehicle in any of the tests. I don't think that
you can determine whether the belts are being used or not used." Cope's opinion is that
under the conditions present on the night of the stop, it is physically impossible for someone
to see the restraints at rest in this vehicle. 

 On cross-examination, Cope acknowledged his tests were not conducted on a road
while the vehicle was moving or on a road that curves or winds, and were not conducted at
the location where the stop took place. Cope guessed at the officer's height. Cope did not
use the same type vehicle as Jeter was driving, although he testified the frame of the Lincoln
he used as the test vehicle is the same as that on the officer's Crown Victoria. 

 In issues one and two, Peterson says the trial court erred in denying the motion to
suppress, because the officer was wrong about the seat belt, and he did not have reasonable
suspicion for the traffic stop. Generally, the standard for review of a motion to suppress is
abuse of discretion. Oles v. State, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999). The
appellate court views the evidence in the light most favorable to the trial court's ruling,
affords almost total deference to the trial court's determination of those facts supported by
the record, and reviews de novo the court's application of the law of search and seizure to
those facts. State v. Ballard, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999) (light most
favorable); Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000) (deference on
historical facts; de novo review on application of law to facts). The record before this Court
includes the video of the traffic stop. 

 Stopping a vehicle and detaining its occupants constitutes a "seizure" within the
meaning of the Fourth Amendment, and a seizure must be objectively reasonable in light of
the particular circumstances of the case. Whren v.United States, 517 U.S. 806, 809-10, 116
S.Ct. 1769, 135 L.Ed.2d 89, 95 (1996); Corbin v. State, 85 S.W.3d 272, 276 (Tex. Crim.
App. 2002). A seizure based on reasonable suspicion or probable cause that an offense has
been committed will generally be reasonable. Id. The determination of reasonable suspicion
is a factual one and is made by considering the totality of the circumstances at the time of the
stop. Loesch v. State, 958 S.W.2d 830, 832 (Tex. Crim. App. 1997). "'Reasonable
suspicion' exists if the officer has specific articulable facts that, when combined with rational
inferences from those facts, would lead him to reasonably suspect that a particular person has
engaged or is (or soon will be) engaging in criminal activity." Garcia v. State, 43 S.W.3d
527, 530 (Tex. Crim. App. 2001) (citation omitted). Operating a vehicle without wearing a
seat belt is a traffic violation. Tex. Transp. Code Ann. § 545.413 (Vernon Supp. 2004); see
State v. West, 20 S.W.3d 867, 871 (Tex. App.--Dallas 2000, pet. ref'd). The State is not
required to show that a traffic offense was actually committed, but only that the officer
reasonably believed a violation was in progress. Garcia v. State, 43 S.W.3d at 530; Green
v. State, 93 S.W.3d 541, 544 (Tex. App.--Texarkana 2002, pet. ref'd). 

 Here, the evidence at the suppression hearing was conflicting, as reflected in our
review of the testimony of Jeter, Larsen, and Cope. The videotape begins only moments
before Peterson's car is stopped; Jeter noticed Peterson's seat belt was not on prior to the
activation of the video camera. Jeter noticed the specific highway location at which he
observed the lack of a seat belt. Although Jeter acknowledges the seat belt strap at rest
cannot be seen in the videotape, the trooper testified unequivocally he saw the seat belt was
not on with the aid of oncoming car headlights. Jeter explained, "There's a lot of things you
can't see in a videotape that are obvious and visual to us on the side of the road." 

 At the suppression hearing, the trial court observes the witnesses' testimony and
demeanor and is in a position to judge their credibility. Villarreal v. State, 935 S.W.2d 134,
138 (Tex. Crim. App. 1996); Zervos v. State, 15 S.W.3d 146, 150 (Tex. App.--Texarkana
2000, pet. ref'd). The trial judge may believe or disbelieve all or any part of a witness's
testimony. State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). We give the trial
court deference in the resolution of the conflicting testimony. The trial court could have
found Jeter's testimony credible. Whether or not the offense was committed, the trial court
could conclude on this record the officer reasonably believed Peterson was not wearing his
seatbelt. Issues one and two are overruled.

 In issue three Peterson argues there was no probable cause for his arrest. His
argument has two prongs: the "totality of the circumstances" did not provide probable cause
for an arrest for DWI; and, without a proper predicate for admission of the PBT results, the
evidence gained from the PBT should have been excluded. 

 A police officer may stop and temporarily detain a driver for a traffic violation. The
officer may then arrest for offenses discovered while investigating the traffic offense. See
Armitage v. State, 637 S.W.2d 936, 939 (Tex. Crim. App. 1982); Gillentine v. State, 781
S.W.2d 382, 384 (Tex. App.--Houston [1st Dist.] 1989, no pet.). Having made a valid traffic
stop, Trooper Jeter was authorized to investigate the smell of alcohol on Peterson's breath
by conducting field sobriety tests to determine if Peterson was driving while intoxicated. Id. 
 A person commits the offense of DWI if he is intoxicated while operating a motor
vehicle in a public place. Tex. Pen. Code Ann. § 49.04 (Vernon 2003). The definition of
intoxication applicable to this offense is (1) not having the normal use of mental or physical
faculties by reason of introduction of alcohol, or (2) having an alcohol concentration of 0.08
or more. See Tex. Pen. Code Ann. § 49.01 (Vernon 2003). The record reflects the officer
had probable cause to arrest Peterson for DWI. Although Peterson initially emphatically told
Jeter that he had not been drinking, Jeter smelled alcohol on appellant's breath. Peterson
admitted he had consumed a couple of beers. The results of the PBT were .159. 

 Peterson argues that the decision to arrest hinged on the PBT results, that the State did
not establish the proper predicate for the PBT device, and that the results of the PBT should
have been excluded. He says the State must prove the device satisfies Tex. R. Evid. 705,
Kelly v. State, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992), and Daubert v. Merrell Dow
Pharms., Inc., 509 U.S. 579, 590-92, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The State
argues Peterson did not preserve error on the reliability of the PBT device. 

 Regardless, the trial court did not err in finding probable cause to arrest for DWI. 
Given the smell of alcohol and Peterson's explanation, and the results of the HGN and the
walk-and-turn tests, there was sufficient information to warrant a reasonable person in
believing Peterson was driving while intoxicated, even without the PBT results. Issue three
is overruled.

 In issue four, Peterson argues the trial court erred by failing to grant his motion to
quash the indictment. (1) The standard of review on a motion to quash is abuse of discretion. 
See Thomas v. State, 621 S.W.2d 158, 163-64 (Tex. Crim. App. 1980) (op. on reh'g). 
Appellant presented the reliability issue in his amended motion to quash, which was based
on article 27.08, set out below: 

 Art. 27.08. Exception to substance of indictment

 There is no exception to the substance of an indictment or information except:


 1. That it does not appear therefrom that an offense against the law was
committed by the defendant;


 2. That it appears from the face thereof that a prosecution for the offense is
barred by a lapse of time, or that the offense was committed after the finding
of the indictment;


 3. That it contains matter which is a legal defense or bar to the prosecution;
and


 4. That it shows upon its face that the court trying the case has no jurisdiction
thereof. 


Tex. Code Crim. Proc. Ann. art. 27.08 (Vernon 1989). 

 Peterson's motion relies on subsection 3 and argues the indictment contains matter
that is a legal defense or bar to the prosecution. For purposes of issue four, Peterson
complains the PBT should not have been relied on by the trooper or the grand jury, because
the PBT evidence is inadmissible as "unapproved technology." But this challenge to the
reliability of the PBT is an evidentiary issue. The Court of Criminal Appeals has held that
a motion to set aside (or quash) must be facially tested by itself under the law, as a pleading;
it can neither be supported nor defeated as such by what evidence is introduced on trial. See
State v. Rosenbaum, 910 S.W.2d 934, 946, 948 (Tex. Crim. App. 1994) (dissenting op.
adopted on reh'g). And the indictment cannot be supported or defeated by evidence
presented at pretrial. Id. See also Farrar v. State, 95 S.W.3d 648, 651 (Tex. App.--Eastland
2002, no pet.) (A trial court may not go behind the face of an indictment to conduct a
"minitrial on the merits" concerning allegations made in a charging instrument.) (quoting
Rosenbaum, 910 S.W.2d 947-48). The trial court did not abuse its discretion in denying the
motion to quash the indictment based on this challenge to the admissibility of evidence. (2) 
Point of error four is overruled. 

 The conviction is affirmed.

 AFFIRMED. 

 PER CURIAM


Submitted on April 15, 2004

Opinion Delivered May 12, 2004

Do Not Publish


Before McKeithen, C.J., Burgess, and Gaultney, JJ.
1. The trial judge gave permission for the filing of the motion to quash on the day of the
plea hearing. 
2. Even if we were to treat the issue as a properly preserved challenge to probable cause
for the DWI arrest, the issue is without merit. We have held on issue three there was
probable cause to arrest without the PBT evidence.