FILED IN
COURT OF CRIMINAL APPEALS

January 20, 2015

ABEL ACOSTA, CLERK

PD-1189-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 1/16/2015 2:00:36 PM
Accepted 1/20/2015 11:50:02 AM
ABEL ACOSTA
CLERK

No. PD-1189-14

IN THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS

FRANCHESKA V. JAGANATHAN, Appellant

v.

THE STATE OF TEXAS, Appellee

Appeal from Chambers County

_____

**FRANCHESKA V. JAGANATHAN'S BRIEF ON THE MERITS**
_____

Ryan W. Gertz
The Gertz Law Firm
2630 Liberty
Beaumont, TX 77702
Tel: (409) 833-6400
Fax: (409) 833-6401
Texas Bar. No. 24048489

# TABLE OF CONTENTS

TABLE OF CONTENTS......................................................................................ii

INDEX OF AUTHORITIES.............................................................................iii

STATEMENT OF THE CASE……………………………………..............1

STATEMENT REGARDING ORAL ARGUMENT…………………………...2

STATEMENT OF FACTS…………………………………………………2

SUMMARY OF THE ARGUMENT…………………………………………...4

ARGUMENT AND AUTHORITIES…………………………………………...5

CONCLUSION..............................................................................................13

PRAYER FOR RELIEF……………………………………………….13

CERTIFICATE OF COMPLIANCE…………….......................................14

CERTIFICATE OF SERVICE........................................................................15

# INDEX OF AUTHORITIES

## Cases

*Abney v. State*, 394 S.W.3d 542 (Tex. Crim. App. 2013)…………………………….8

*Amador v. State,* 275 S.W.3d 872 (Tex. Crim. App. 2009)…………...................7, 8

*Baker v. State*, 50 S.W.3d 143 (Tex.App.-Eastland 2001, pet. ref'd)………………9

*Bishop v. State,* 85 S.W.3d 819 (Tex. Crim. App. 2002)………………………..7, 8

*Castro v. State,* 227 S.W.3d 737 (Tex. Crim. App. 2007)………………………….8

*Davis v. State,* 947 S.W.2d 240 (Tex. Crim. App. 1997)…………………………..8

*Ford v. State,* 158 S.W.3d 488 (Tex. Crim. App. 2005)…………….....................7

*Green v. State*, 93 S.W.3d 541(Tex.App.-Texarkana 2002, pet. ref'd)………….8, 9

*Mouton v. State*, 101 S.W.3d 686 (Tex.App.-Texarkana 2003, no pet.)…………...8

*State v. Steelman,* 93 S.W.3d 102, 106 n. 5 (Tex. Crim. App. 2002)……………...8

*United States v. Garcia*, 976 F.Supp.2nd 856(N.D. Tex 2013)…………………9, 10

*Whren v. United States,* 517 U.S. 806 (1996)………………………………………8

No. PD-1189-14

IN THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS

FRANCHESKA V. JAGANATHAN,                                    Appellant

v.

THE STATE OF TEXAS,                                          Appellee

_____

**FRANCHESKA V. JAGANATHAN'S BRIEF ON THE MERITS**
_____

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

Comes now Francheska Jaganathan, by and through her Counsel, and respectfully presents to this Court her brief on the merits.

STATEMENT OF THE CASE

Francheska Jaganathan was arrested for possession of marijuana on June 5, 2010.[1] Jaganathan filed a motion to suppress the evidence because of an unlawful stop and the trial court held a hearing on April 5, 2012.[2] In December, 2012, Judge Carroll Wilborn denied the motion to suppress.[3] In April, 2013, Judge Randy McDonald heard Jaganathan's guilty plea, but granted her deferred adjudication community supervision and a fine of

---

[1] RR 3.
[2] RR 13-39.
[3] RR 40.

1

$1,500 amongst other requirements.[4]  The Court of Appeals reversed and remanded on July 8, 2014.  This Court granted the State's Petition for Discretionary Review on November 19, 2014.

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument was not granted by the Court but Jaganathan respectfully submits that oral argument would aid the Court in the disposition of the case as it presents novel questions for consideration.

## STATEMENT OF FACTS

The entire incident was captured on video and thus the facts are not disputed.[5]  Francheska Jaganathan, was pulled over while driving east-bound through Chambers County on Interstate - 10.  According to Trooper Norsworthy, who pulled her over, Jaganathan was stopped for driving in the left hand lane in a segment of the Interstate that requires vehicles to use the left lane for "passing only" and for no other reason.[6]

The controlling "Left Lane For Passing Only" sign first appears in Chambers County between Mile Marker 813 and Mile Marker 814.[7]  This stretch of Interstate 10 has three lanes and a shoulder on both sides.

---

[4] CR 4, 5.  The State's Brief to this Court mistakenly asserts that Jaganathan was convicted, she was not.

[5] RR 4, Exhibit 2 – Video.

[6] RR 2, 18.

[7] RR 2, 19.  Note to the Court: several such signs have now been added between Baytown and Winnie, however, in 2010 the sign at Mile Marker 813 was the first one on the east-bound side of Interstate - 10.

2

Jaganathan was passing vehicles via the left hand lane at the time she passed both Mile Marker 813 and, subsequently, the "Left Lane For Passing Only" sign.[8] She was approached by the Trooper, crossed three lanes of traffic, and stopped prior to arriving at Mile Marker 814. She was neither speeding nor committing any objectively verifiable traffic offense. In all, Jaganathan traveled less than half a mile in the left lane after passing the controlling sign before the Trooper turned on his light bar and pulled her over.[9]

The video shows two vehicles were in the center lane between Jaganathan and the Trooper: a blue truck - that she passes between the time that she crosses the Mile Marker 813 sign and the "Left Lane For Passing Only" sign - and a white sedan immediately in front of that truck.[10] Jaganathan appears to be driving faster than both the blue truck and the white vehicle.[11] The Trooper - in the right lane – was driving faster than the speed of traffic.[12] Once the Trooper came into Jaganathan's line of sight, she slowed down noticeably and the white vehicle began gaining ground on

---

[8] RR 4, Exhibit 2; Video 1:09 – 1:26.

[9] Expert Jack McClelland believed it was thirty-three seconds or less. *See* RR 2, 45; *see also* RR 4, Exhibit 2: Video 1:26 – 1:45 (when Trooper pulls in behind Jaganathan).

[10] RR 4, Exhibit 2; Video 1:19-1:30; *see also* RR 2, 21-22 (Trooper Norsworthy agrees that a white vehicle was immediately in front the vehicle in the middle lane).

[11] RR 4, Exhibit 2: Video 1:19-1:27.

[12] RR 2, 20 & 30, RR 4, Exhibit 2; Video 00:00 – 1:20 (showing Trooper pass 12 vehicles in less than two minutes before pulling up to Jaganathan). Additionally, Trooper Norsworthy concedes he was going faster than the speed of traffic. RR 2, 20.

3

her.[13] Between the time that Jaganathan passed the "Left Lane For Passing Only" sign and the Trooper pulled into the middle lane, less than thirteen seconds elapsed.[14]

During the course of the traffic stop, the Trooper smelled marijuana in the vehicle and conducted a search. He found the vehicle contained marijuana in the trunk. The Trooper did not obtain a warrant before detaining the Defendant or searching the vehicle.

## SUMMARY OF THE ARGUMENT

`The Court of Appeals correctly found that Trooper Norsworthy did not have reasonable suspicion to conduct a traffic stop and warrantless arrest of Jaganathan. The reasoning of the Court of Appeals was both fact-based and sound. The Court concluded that Jaganathan completed a passing maneuver in close proximity to the "Left Turn for Passing Only" sign and increased the distance between her car and the car she passed; a white car merged into the middle lane, making it potentially unsafe for her to change lanes; the State Trooper approached Jaganathan's vehicle at a high rate of speed, which caused her to slow down and hindered her ability to pass the white car in the middle lane; the State Trooper followed Jaganathan in the left lane for only two tenths of a mile; and Jaganathan was not impeding

---

[13] RR 2, 23 and RR 2, 30-31; RR 4, Exhibit 2: Video 1:33-1:40.
[14] RR 4, Exhibit 2: Video 1:26 – 1:39.

4

traffic or endangering other drivers' safety. The Court concluded, therefore, that evidence did not give rise to reasonable suspicion that Jaganathan had violated a traffic offense and thus she was seized of her liberty unlawfully. This decision was correct and should be upheld.

<u>ARGUMENT AND AUTHORITIES</u>

### 1. **Clarifying the Question Presented**

Passing a vehicle, unlike speeding or using a turn signal, is not a binary act. A vehicle is either exceeding the speed limit or is not. A driver either uses a turn signal to indicate a lane change or does not. The State incorrectly assumes, based on her issue presented, that passing is similar to those offenses; it is not.

Passing, rather, involves a series of relatively complicated maneuvers and calculations. One is not simply passing or not passing. Instead a driver must: pass the slower vehicle at some speed exceeding the other vehicle's speed, travel a sufficient distance beyond that vehicle to safely pull back in front of that vehicle, and do so while determining whether other vehicles in the lane warrant passing or are a sufficiently safe distance ahead to make it safe to pull back into the original lane. The law requires all of these tasks be accomplished while neither speeding nor following too closely, yet properly

5

using turn signals, not placing other vehicles in danger, and – pertinent to this case – not obstructing the passage for emergency vehicles.

Instead of considering the question: "Does driving in the left lane while not 'in the process of passing' after passing a 'Left Lane for Passing Only' sign provide reasonable suspicion of a traffic violation" as the State would urge, the Court should consider a question driven by the actual facts of this case.

The undisputed facts are: 1) Jaganathan had passed one vehicle and was gaining ground on another when the "Left Lane Passing Only" sign became effective, 2) Jaganathan slowed her vehicle once Norsworthy came into view, 3) Trooper Norsworthy pulled into the center lane, traveling at a high rate of speed, seconds after both vehicles passed the sign, and 4) it would not have been reasonable or safe for Jaganathan to pull directly in front of him into the center lane. Given those facts, the correct question for the Court to consider is: When a driver proceeds for thirteen seconds – or less than a quarter of a mile - in the left lane after simultaneously passing a vehicle and a "Left Lane for Passing Only" sign, all the while gaining ground on another vehicle, does a Trooper have sufficient evidence to necessitate a traffic stop? Clearly the answer is no. For that reason, Jaganathan would urge this Court to affirm the Court of Appeals reversal.

6

## 2. **Standard of Review**

In reviewing a trial court's ruling on a motion to suppress, Texas appellate courts use a bifurcated standard of review to evaluate whether reasonable suspicion exists for a stop exists.[15] Courts give deference to a trial court's determination of the facts as supported by the record but review *de novo* the trial court's application of the law to facts, which do not turn on credibility and demeanor.[16]

Because the alleged traffic violation was caught on video, this case presents a purely legal question as the facts are not – and should not be - in dispute. The question presented does not turn on a question of fact or the credibility of the witnesses but rather the reasonableness - as a matter of law - of the stop itself. As such, the Court of Appeals correctly applied *de novo* review.

## 3. **Authority**

When considering a motion to suppress, the Defendant initially bears the burden of demonstrating that the search or seizure was conducted absent a warrant.[17] Once the defendant demonstrates that a warrantless seizure and search occurred, the burden shifts to the State to prove a warrant existed or a

---

[15] *Amador v. State,* 275 S.W.3d 872, 878 (Tex. Crim. App. 2009).
[16] *Id.*; *see also Ford v. State,* 158 S.W.3d 488, 492-93 (Tex. Crim. App. 2005).
[17] *Amador,* 275 S.W.3d at 878; *Bishop v. State,* 85 S.W.3d 819, 821 (Tex. Crim. App. 2002).

7

recognized exception justifies the warrantless seizure or search given the totality of the circumstances.[18] One exception would be that the officer observed criminal activity or, as alleged in this case, a traffic violation.

To justify a traffic stop, an officer must observe specific and articulable facts which, together with inferences from those facts, would warrant a reasonable person to believe a traffic violation had occurred.[19] Moreover, the United States Supreme Court has held that a traffic stop will not be valid unless a reasonable officer in the same circumstances would have stopped the car for the suspected offense.[20]

In *Abney v. State*, this Court outlined how courts should consider cases involving stops for a violation of a "Left Lane for Passing Only" requirement.[21] The Court highlighted previous decisions where Defendants had driven various distances in the left lane prior to being stopped on that basis.[22] But, in each of those cases, there were no other vehicles in the immediate vicinity of the offending vehicles.[23]

---

[18] *Amador*, 275 S.W.3d at 878. *See also Castro v. State,* 227 S.W.3d 737, 741 (Tex. Crim. App. 2007); *State v. Steelman,* 93 S.W.3d 102, 106 n. 5 (Tex. Crim. App. 2002); *Bishop,* 85 S.W.3d at 822.

[19] *See Davis v. State,* 947 S.W.2d 240, 242-43 (Tex. Crim. App. 1997).

[20] *Whren v. United States,* 517 U.S. 806, 809 (1996).

[21] *See generally Abney v. State*, 394 S.W.3d 542 (Tex. Crim. App. 2013).

[22] *Abney*, 394 S.W.3d at 546.

[23] *See Abney*, 394 S.W.3d at 546 (discussing *Mouton v. State,* 101 S.W.3d 686, 690 (Tex.App.-Texarkana 2003, no pet.) (vehicle traveled at least a mile without passing another vehicle); *Green v. State,* 93 S.W.3d 541, 545 (Tex.App.-Texarkana 2002, pet.

8

After noting the vagueness of the Statute, the Court delineated a totality of the circumstances test and suggested consideration of two key questions: 1) how long must someone be traveling in the left lane without passing another vehicle before a stop is warranted; and 2) how close must a driver be to the controlling sign for it to control?[24] In the present case, this Court need only address the first question as there is no question that Jaganathan passed the controlling sign - and it took effect – east of Mile Marker 813.

Applying this Court's test from *Abney*, a U.S. District Court recently added two additional factors to that first question: 1) whether the video shows the accused either actively passing another vehicle or in a position to pass another vehicle and 2) whether the officer's actions influenced the accused's driving.[25] As to these two factors, the facts of the present case are nearly identical to those in *Garcia*. In that case, the Trooper was passed by Garcia in the left lane.[26] The Trooper observed Garcia pass one vehicle and was gaining ground on a large rig truck further ahead. The Trooper then speed up his vehicle, closing the gap between his clearly marked patrol

---

ref'd) (no vehicles were in the vicinity of Green while she was in the left hand lane); *Baker v. State,* 50 S.W.3d 143, 145 (Tex.App.-Eastland 2001, pet. ref'd) (after passing the officer, Baker continued to travel in the left hand lane without passing another vehicle)).
[24] *Abney*, 394 S.W.3d at 550.
[25] *United States v. Garcia*, 976 F. Supp. 2d 856, 865-66 (N.D. Tex 2013).
[26] *Id*.

vehicle and the rig truck. The Trooper testified that the offense Garcia committed was failing to pull back into the right lane directly in front of his now accelerating patrol vehicle.[27] Yet, like the present case, the Trooper acknowledged on cross examination that it would have been unsafe for Garcia to pull directly in front of his patrol vehicle after he had accelerated and closed the gap.[28] Like the present case, the distance the Trooper observed Garcia's driving was less than a mile. In granting Garcia's motion to suppress, the Court concluded that the Trooper did not have reasonable suspicion of a traffic violation because he observed Garcia actively passing one vehicle while gaining ground on another and the Trooper's own actions impacted the Garcia's ability to safely get out of the left lane.[29]

### 4. **Argument**

Similar to *Garcia*, no reasonable officer would have initiated this stop given the limited time between Jaganathan entering the "Left Lane for Passing Only" zone and when the Trooper began pulling her over. Two key facts illustrate why the stop was unreasonable: 1) that she was passing vehicles at the time she passed the sign and was approached by the Trooper; and 2) that the Trooper observed her for less than thirteen seconds in the

---

[27] *Id*. at 866.
[28] *Id*.
[29] *Id.*

prohibited zone before pulling toward her to initiate a stop. Both facts illustrate that the stop was both premature and unreasonable.

First, Jaganathan was passing a blue truck at the time she passed the "Left Lane for Passing Only" sign and a white sedan was immediately in front of the blue truck.[30] She was clearly traveling faster than both vehicles and would have overcome the white sedan in short order had circumstances not changed. Even Trooper Norsworthy concedes that the white sedan was in the middle lane directly in front of the blue truck – a fact the State discounts in their brief to this Court.

With the white sedan immediately in front of the blue truck – it would have been unreasonable for Jaganathan to proceed immediately to the middle lane. And when the Trooper pulled into her line of site, Jaganathan slowed and chose not to pull closer to the Trooper into the middle or right lane.[31] The Trooper even conceded that it would not be reasonable – and people typically do not – pull closer to a clearly-marked patrol car approaching at a high rate of speed.[32] Thus, without the influence of the Trooper approaching at a high speed in the right lane and proceeding to the

---

[30] RR 4, Exhibit 2; Video 1:19-1:30; *see also* RR 2, 21-22 (Trooper Norsworthy agrees that the white vehicle was immediately in front the vehicle in the middle lane).

[31] RR 2, 30-31 (Again, Trooper Norsworthy confirms this by agreeing that her "vehicle slowed noticeably," RR2, 23).

[32] RR 2, 23-24.

11

center lane, Jaganathan likely would have continued to pass the white vehicle next.

Second, and more importantly, less than thirteen seconds elapsed from the time Jaganathan passed the controlling sign and the time the Trooper pulled into the middle lane closer to Jaganathan. At a speed of sixty-five miles an hour, Jaganathan would have traveled less than a quarter of a mile in thirteen seconds.[33] Even if one were to consider the twenty-six seconds that transpired from when she entered the restricted zone to the time the Trooper turned on his lights, she would have traveled less than half a mile.

Given these indisputable facts, this Court need only determine whether they amount to reasonable suspicion for a traffic stop. Certainly they do not. Perhaps if no other vehicles had been in the center lane or the Trooper had observed Jaganathan driving for some extended period in the left lane without passing or she had been violating some objective standard – the speed limit for example – that would have justified the stop; but this Court need not consider such hypotheticals.

Put simply, the stop was premature at best. No reasonable officer would observe Jaganathan's conduct and conclude she was violating the

---

[33] Jaganathan would ask the Court to take judicial notice of the fact that, at sixty miles per hour, a vehicle would travel one quarter of a mile in fifteen seconds. Thus, at a higher rate of speed the time necessary to travel a quarter of a mile would diminish. Numerous calculators are available on the web to calculate exact outputs based on a variety of variables such as speed and distance.

12

statute in question. She should not have been stopped and the trial court erred by denying her motion to suppress. The Court of Appeals, however, correctly reversed that decision. Jaganathan respectfully requests that this Court affirm that decision.

## CONCLUSION

The Court of Appeals correctly reversed the trial court's denial of the motion to suppress in this case. Given the indisputable video evidence, no reasonable officer would have pulled Jaganathan over given the fact that she had passed one vehicle and was gaining ground on another coupled with the fact that the officer pulled into the center lane in a clearly marked vehicle at a high rate of speed. The Trooper simply did not observe Jaganathan's driving for a sufficient period of time to determine whether she had committed this particular traffic offense. This Court should affirm.

## PRAYER FOR RELIEF

WHEREFORE, the Francheska Jaganathan prays that the Court of Criminal Appeals AFFIRM the judgment of the Court of Appeals.

Respectfully submitted,

/s/ *Ryan W. Gertz*

_____

Ryan W. Gertz
The Gertz Law Firm
2630 Liberty
Beaumont, TX 77702
Tel: (409) 833-6400
Fax: (409) 833-6401
Texas Bar. No. 24048489
Attorney for Francheska Jaganathan

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that according to the Microsoft Word count tool this document contains 3,000 words.

/s/ *Ryan W. Gertz*

_____

Ryan W. Gertz

14

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 16th date of January, 2015, a true and correct copy of the Francheska Jaganathan's Brief on the Merits was e-filed or e-mailed to the following:


Eric Carcerano
Assistant District Attorney
Chambers County
P.O. Box 1409
Anahuac, TX 77514
ecarcerano@co.chambers.tx.us

John R. Messinger
Assistant State Prosecuting Attorney
P.O. Box 13046
Austin, TX 78711
information@spa.texas.gov


/s/ *Ryan W. Gertz*
_____

Ryan W. Gertz
Attorney for Appellant