**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-21-00119-CR**
_____

**ANDREW SHIRLEY JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

_____

**On Appeal from the 174th District Court**
**Harris County, Texas**
**Trial Cause No. 1599574**
_____

**MEMORANDUM OPINION**

In 2018, Appellant Andrew Shirley Jr. was indicted for possession of a controlled substance, namely methamphetamine.[1] Shirley pleaded guilty pursuant to a plea agreement, and the trial court deferred adjudication and placed Shirley on community supervision for a period of three years. In July of 2020, the State filed a motion to adjudicate Shirley's guilt, alleging three violations of Shirley's conditions

_____

[1] *See* Tex. Health & Safety Code Ann. § 481.115.

1

of community supervision. At the hearing on the motion to adjudicate, the State announced it was abandoning two of the alleged violations[2] and only seeking adjudication based on Shirley's commission of the offense of evading arrest or detention, and Shirley pleaded "not true." After hearing evidence, the trial court found that Shirley had violated the conditions of his community supervision as alleged, adjudicated Shirley guilty, and sentenced him to imprisonment for nine years. In one issue, Shirley challenges his adjudication of guilt and argues there was no reasonable suspicion to support the traffic stop that precipitated his evasion of arrest or detention.[3] We affirm.

Hearing on the Motion to Adjudicate

Testimony of Officer Christopher Pham

Officer Pham, with the Houston Police Department (HPD), testified that he initiated a traffic stop on June 29, 2020, because the vehicle's temporary plate "came back expired[]" and the driver failed to use a turn signal. Pham agreed that another officer, Officer Michael Falcone, had informed him the defendant had failed to make a turn signal, and he relied on what Falcone had said, but he personally observed the

---

[2] The alleged violations the State chose to abandon were possession of a controlled substance with intent to deliver and a positive drug test for multiple substances on two occasions.

[3] Under an order issued by the Supreme Court of Texas, this case was transferred to our Court from the Fourteenth Court of Appeals in Houston, Texas. *See* Tex. Gov't Code Ann. § 73.001.

expired license tag. Pham recalled that after he turned on his emergency lights, the driver failed to stop for "about a quarter of a mile." Pham testified that other marked units were behind him in pursuit of Shirley. Pham testified as follows:

> I initiated a traffic stop on a Buick. The Buick failed to stop for us with our emergency lights on, evading from us, and ended up wrecking his vehicle at a construction site. The driver got out of the vehicle after he wrecked the vehicle and immediately evaded from me on foot.
> . . .
> After the vehicle crashed, I saw the driver jump out of the driver's seat and immediately evade into an apartment complex. I pursued him on foot until he got to the far end of the complex where he tripped up trying to jump over a water puddle. And I told him, "Stop, let me see your hands." He got on the ground and immediately gave up….
> . . .
> So[,] after he crashed the vehicle into a construction site, I saw the driver get out of the driver's seat and…evade from me on foot into an apartment complex. I chased after him on foot for about 60 or 70 yards. He tried to jump over a water puddle and slipped, and he fell on the ground. I told him to stop, and I told him to show me his hands. That's when he gave up. I detained him at that point and brought him back to the original scene.

According to Pham, Shirley then identified himself to Pham. Pham identified the defendant as Shirley, the man he stopped that night.

On cross-examination, defense counsel questioned Pham about the lack of probable cause for the stop in Pham's offense report, and Pham replied that he stopped Shirley because he failed to signal a lane change and because he had an expired license tag. The temporary license tag had expired on May 27, 2020, and the date of the offense was June 29, 2020. Defense counsel then asked whether the Department of Public Safety had waived renewal of license tags because of the

3

coronavirus pandemic, and Pham replied, "I'm not sure, sir. I'm not sure of the specifics."

<u>Testimony of Officer Michael Falcone and of Probation Officer Jesusa Goana</u>

Officer Michael Falcone testified that he was a plainclothes undercover officer assigned to the HPD Westside Division Tactical Unit. Falcone testified that on June 29, 2020, he was conducting surveillance police work. The following exchange occurred on examination by defense counsel:

> [Defense counsel]: …Is your department stopping people for expired tags during the pandemic given that the DPS has restrictions because of COVID?
>
> [Falcone]: Yes. We continued to stop people for expired registration.
>
> [Defense counsel]: And is that something that you personally have done, is stop people for expired registration?
>
> [Falcone]: I'm in a plainclothes capacity, but I do call out expired registration.
>
> [Defense counsel]: Okay. And is your department issuing tickets for expired registrations?
>
> [Falcone]: I do not write tickets, sir, so I don't know that answer at this time.
>
> [Defense counsel]: Okay. Do you know if your department was stopping people for expired registrations in June of 2020?
>
> [Falcone]: Yes, sir.
> . . .
> [Defense counsel]: Do you know if your department was issuing tickets for expired registration in June of 2020?

[Falcone]: I don't know if they were issuing tickets, sir. I'm in a plainclothes capacity, so I do not do that.

Falcone notified the marked units of Shirley's vehicle number and "paper tag[]" and his failure to signal.

One of Shirley's probation officers, Jesusa Goana, also testified that Shirley was compliant with the terms of his community supervision "until he picked up the law violation[,]" including possession with the intent to deliver and evading arrest as well as two positive drug tests.

Closing Argument

After the close of evidence, the defense argued that there was no probable cause for the traffic stop because, at the time of the alleged offense, DPS had suspended enforcement against expired tags. In response, the State argued that Officer Falcone had testified that HPD was still writing tickets for expired registration. The trial court found that the State had met its burden of proof by a preponderance of the evidence and further stated:

> As it relates to the issue of whether this was a lawful detention or arrest, the Court believes that the -- Officer Pham had at the bare minimum a right to temporarily detain the defendant to investigate the issue as it relates to the violation -- what appeared to be a violation of the traffic laws as it relates to an expired registration. There was testimony from Officer Falcone that they were still giving -- HPD was still writing tickets for expired registration. So[,] at the very least, the officer had a right to investigate this alleged violation for a temporary detention, and so I believe that it was a lawful detention -- or attempt of a lawful detention. So[,] I do find the State's met their burden of proof by a preponderance.

5

The trial court found that Shirley had violated the conditions of his community supervision, adjudicated him guilty, and assessed punishment at nine years' confinement.

## Issue

The only issue Appellant raises on appeal is whether the record reflects that the traffic stop was supported by reasonable suspicion. Appellant argues that the trial court erred in adjudicating his guilt because the State failed to prove all the elements of evading arrest or detention. He argues that the expired "tag did not supply reasonable suspicion of criminal activity because there was no offense of driving with an expired registration in June of 2020." According to Appellant, the registration laws were suspended by the governor in a press release on March 16, 2020.[4] Appellant argues that the Governor's suspension of the registration laws had the "force and effect" of law and therefore the State failed to prove that the attempted detention was lawfully supported by reasonable suspicion.

According to the State, the Governor did not issue a "valid executive proclamation, order, or regulation that is required to suspend a state statute." The State further contends that for a proclamation to be legally binding, it must be in

---

[4] *See* Press Release, Greg Abbott, Office of the Texas Governor, Governor Abbott Waives Certain Vehicle Registration, Titling, and Parking Placard Regulations in Texas (March 16, 2020), https://gov.texas.gov/news/post/governor-abbott-waives-certain-vehicle-registration-titling-and-parking-placard-regulations-in-texas.

writing and filed with the Secretary of State.[5] Because the Governor's press release was not filed with the Secretary of State, the State argues it amounts to no more than "a policy of prosecutorial discretion" and it did not suspend or change the law.[6]

## Standard of Review

We review a decision to adjudicate guilt in the same manner as we review a decision to revoke community supervision—for abuse of discretion.[7] In a hearing to revoke deferred adjudication, the State only needs to prove the violation of a condition of probation by a preponderance of the evidence.[8] The evidence meets this standard when the greater weight of the credible evidence creates a reasonable belief

---

[5] Citing *Williams v. State*, 176 S.W.2d 177, 184 (Tex. Crim. App. 1943); *In re Expunction*, 497 S.W.3d 505, 509 (Tex. App.—Houston [1st Dist.] 2016, no pet.); *Manor Casino v. State,*34 S.W. 769, 770 (Tex. App.—Austin 1896, no writ).

[6] Here, the appellate record does not reflect that Shirley argued to the trial court that the Governor's press release resulted in a suspension or change in the law. Rather, Shirley only argued to the trial court that DPS had suspended enforcement of expired tags. The trial court overruled that objection and found that the traffic stop was a lawful detention. An appellant's argument to the trial court must comport with his argument on appeal. *See Yazdchi v. State*, 428 S.W.3d 831, 844 (Tex. Crim. App. 2014). We restrict our analysis to whether the traffic stop was supported by reasonable suspicion. *See id.*

[7] *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006); *see also* Tex. Code Crim. Proc. Ann. art. 42A.108(b).

[8] *Hacker v. State*, 389 S.W.3d 860, 864-65 (Tex. Crim. App. 2013); *Rickels*, 202 S.W.3d at 763-64.

that the defendant has violated a condition of his community supervision.[9] We must examine the evidence in the light most favorable to the trial court's order.[10]

In determining whether the allegations in the motion to adjudicate are true, the trial court is the sole trier of facts, the judge of the credibility of the witnesses, and the arbiter of the weight to be given to the testimony.[11] It is within the province of the trial court, as factfinder, to reconcile conflicts or contradictions in the evidence, and we do not reverse the trial court if the conviction finds support in the evidence.[12] The State only needs to establish one sufficient ground for revocation by a preponderance of the evidence.[13]

Reasonable Suspicion for a Traffic Stop

A traffic stop constitutes a seizure under the Fourth Amendment and must be supported by reasonable suspicion that an individual was committing or had committed a traffic violation.[14] "Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those

---

[9] *Rickels*, 202 S.W.3d at 763-64 (citing *Scamardo v. State*, 517 S.W.2d 293, 298 (Tex. Crim. App. 1974)).

[10] *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. 1981).

[11] *Taylor v. State*, 604 S.W.2d 175, 179 (Tex. Crim. App. 1980); *Trevino v. State*, 218 S.W.3d 234, 240 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

[12] *See Cooks v. State*, 844 S.W.2d 697, 708 (Tex. Crim. App. 1992); *Shah v. State*, 403 S.W.3d 29, 34 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd).

[13] *See Smith v. State*, 286 S.W.3d 333, 342 (Tex. Crim. App. 2009); *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. 1980).

[14] *Davis v. State*, 947 S.W.2d 240, 242-45 (Tex. Crim. App. 1997) (citing *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968)).

8

facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity."[15] In determining whether a police officer had reasonable suspicion to initiate a traffic stop, courts must consider the totality of the circumstances and look solely to whether there was an objective basis for the stop.[16]

To support a reasonable suspicion, the articulable facts must show "'that some activity out of the ordinary has occurred, some suggestion to connect the detainee to the unusual activity, and some indication that the unusual activity is related to crime.'"[17] The applicable law does not require an actual violation but only that "the officer reasonably believed a violation was in progress."[18] In determining whether an officer's suspicion was reasonable, we employ an objective standard: whether the facts available to the officer at the moment of detention warrant a person of reasonable caution to believe that the action taken was appropriate.[19] Driving with expired registration violates multiple provisions of the transportation code.[20]

---

[15] *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007).

[16] *Id.*

[17] *Derichsweiler v. State*, 348 S.W.3d 906, 916 (Tex. Crim. App. 2011) (quoting *Meeks v. State*, 653 S.W.2d 6, 12 (Tex. Crim. App. 1983)).

[18] *Green v. State*, 93 S.W.3d 541, 545 (Tex. App.—Texarkana 2002, pet. ref'd); *see also Cook v. State*, 63 S.W.3d 924, 929 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd).

[19] *See Terry*, 392 U.S. at 21-22; *Hernandez v. State*, 983 S.W.2d 867, 869 (Tex. App.—Austin 1998, pet. ref'd) (citing *Davis*, 947 S.W.2d at 243).

[20] *See, e.g.*, Tex. Transp. Code Ann. §§ 502.040(a) (Registration Required; General Rule), 502.407(a) (Operation of Vehicle with Expired License Plate),

Analysis

Shirley did not argue in the trial court that his vehicle registration was not expired, nor does he make this argument on appeal. Shirley also did not argue in the trial court that he did not evade arrest or detention, nor has he made this argument on appeal.

Officer Pham testified that he made a traffic stop of Shirley in part for an expired license tag. Pham also testified that the vehicle's temporary license tag had an expiration date of May 27, 2020, and he was not sure whether DPS had waived renewal of license tags because of the pandemic. Officer Falcone testified that in June 2020, HPD officers were still stopping people for expired registration, but because he worked in a plainclothes assignment, he did not know whether HPD was issuing tickets for an expired registration.

The testimony of Officers Pham and Falcone constitutes evidence "'that some activity out of the ordinary ha[d] occurred, some suggestion to connect the detainee to the unusual activity, and some indication that the unusual activity [was] related to [a] crime.'"[21] The officers' testimony reflects that they "reasonably believed a violation was in progress."[22] Viewing the evidence in the light most favorable to the

502.473(a) (Operation of Vehicle Without Registration Insignia), 504.943 (Operation of Vehicle Without License Plate).

[21] *See Derichsweiler*, 348 S.W.3d at 916 (quoting *Meeks*, 653 S.W.2d at 12).
[22] *See Green*, 93 S.W.3d at 545; *Cook*, 63 S.W.3d at 929.

10

trial court's judgment, we conclude that the trial court did not abuse its discretion in concluding that there was reasonable suspicion for the traffic stop. Additionally, the defendant did not challenge at trial that he failed to stop and that he evaded arrest. We conclude that the State proved by a preponderance of the evidence that Shirley committed the offense of evading arrest or detention.[23] The trial court did not abuse its discretion in adjudicating Shirley's guilt.

We overrule Appellant's issue, and we affirm the trial court's judgment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on March 28, 2022
Opinion Delivered April 13, 2022
Do Not Publish

Before Kreger, Horton and Johnson, JJ.

---

[23] *See Hacker*, 389 S.W.3d at 864-65; *Garrett*, 619 S.W.2d at 174.