NO. 07-01-0250-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

OCTOBER 11, 2002

_____

WADE LEE NUTTALL,

Appellant

v.

THE STATE OF TEXAS,

Appellee

_____

FROM THE 121ST DISTRICT COURT OF TERRY COUNTY;

NO. 4594; HON. KELLY G. MOORE, PRESIDING

_____

Before QUINN and REAVIS, JJ., and BOYD, SJ.[1]

Wade Lee Nuttall (appellant) appeals his conviction for possession of a controlled substance. Via three issues, he contends the trial court erred by failing to grant his motion to suppress because: 1) he did not give consent to search his person; 2) the search did not qualify as a pat-down; and, 3) he was unlawfully detained. We affirm.

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2002).

### *Standard of Review*

The applicable standard of review is well settled and need not be reiterated. Instead, we cite the parties to *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000) for an explanation of same.

### *Background*

Viewing the evidence in a light most favorable to the trial court's decision, *id.* at 327-28 (requiring as much), we note the following. Appellant rode as a passenger in a car being driven by an individual named Tucker. The latter ran a red light, as witnessed by Officer Johnson (an officer with the Brownfield police force). Johnson then stopped Tucker, approached the car, and asked Tucker for his license and registration. Thereafter, Tucker was asked to step from the vehicle, which he did. As he and the officer stood behind the car, Johnson told Tucker why he was stopped. The reasons given included the traffic light matter, as well as the absence of a front license plate and an expired inspection sticker. When asked where he was coming from, Tucker responded "El Paso." He allegedly rented a car in or around Lubbock, drove it to El Paso, left it at a rental car agency at the El Paso International Airport, and was returning to Brownfield via the car in which Johnson stopped him. Apparently, appellant followed Tucker to El Paso in that car.

After conversing with Tucker momentarily, Johnson left him standing alone, returned to Tucker's vehicle, and proceeded to ask appellant for identification. During this conversation, appellant was "extremely nervous," breathed in rapid, shallow breaths, and

2

evasively answered Johnson's questions. Furthermore, appellant indicated that the address on his driver's license was not current.[2]

Johnson returned to his squad car to report the stop, solicit information about the existence of outstanding warrants on either of the detainees, and request backup. He decided to seek backup upon realizing that Tucker was the brother of a good acquaintance. This acquaintance had told the officer that Tucker was "heavy" into drugs and that he (Tucker) had been threatened with bodily harm by someone in El Paso over a drug matter. Eventually, the police dispatcher responded to Johnson's solicitation and informed him that either Tucker or appellant had been twice arrested for narcotics violations.[3]

Subsequently, Johnson left his vehicle, approached Tucker, explained the traffic citations he proposed to issue him, and asked if Tucker's car contained any contraband of any type. Tucker responded in the negative. The officer then asked for permission to search the vehicle. Tucker said no. Johnson then proceeded to Tucker's car to return appellant's license. When asked the name of the rental company at which the rental car was allegedly left, appellant mentioned a company different than that previously mentioned by Tucker. And, when asked about prior arrests, appellant admitted to involvement in a drug transaction that resulted in him being placed on deferred adjudication.

---

[2]The address on Tucker's driver's license was also incorrect.

[3]We are unable to determine to whom the dispatcher referred. This is so because the audio portion of the video containing the dialogue was unclear.

Johnson, then, returned to where Tucker stood. By this time, another officer had arrived on the scene. The second officer stood by Tucker as Johnson patted down Tucker for weapons and informed him that a drug dog had been summoned to conduct an open air search. Thereafter, Johnson asked appellant to exit the car, told him that a drug dog would soon arrive to conduct a search, asked if there was any contraband in the car, explained that if contraband was found therein appellant could be implicated in the offense, and stated that disclosing the presence of narcotics before the drug dog arrived could be helpful. In response, appellant admitted that he had a "baggie" in his pocket. Johnson removed the "baggie," the contents of which were determined to be a controlled substance.

### Application of Standard

*Unlawful Detention*

We initially address the contention that appellant's detention was unlawful. To the extent that the officer witnessed Tucker run a red light, he had reasonable suspicion, if not probable cause, to believe that a crime occurred; same also provided lawful basis to conduct a traffic stop. *See McVickers v. State*, 874 S.W.2d 662, 664 (Tex. Crim. App. 1993) (stating that an officer may lawfully stop and detain a person for a traffic violation). Once Tucker was stopped, the officer was entitled to garner information about the detainee's license, destination, and purpose of the trip without transgressing constitutional or statutory limitation. *Ortiz v. State*, 930 S.W.2d 849, 856 (Tex. App.--Tyler 1996, no pet.) (so holding). And, the information he garnered could be used in assessing the existence of reasonable suspicion to continue the temporary detention. *Id.* Regarding that

4

information at bar, it consisted of 1) recognizing Tucker as the brother of an acquaintance, 2) remembering that Tucker's brother had stated that Tucker was a "heavy" drug user, 3) remembering that Tucker's brother had stated that Tucker had been threatened by an individual in El Paso over an event involving drugs, 4) discovering that Tucker was returning from El Paso, 5) discovering Tucker's purpose for going to El Paso (*i.e.,* to return a car that he had rented in Lubbock while appellant followed him there in the vehicle in which they would come back), 6) observing appellant's nervousness, rapid breathing, and evasiveness, and 7) discovering that one or more of those in the car had been arrested for drug offenses before.[4] To this we add the officer's conclusion that the reason given for going to El Paso was dubious, since one did not normally return a rented car to a city different from the one in which it was rented while having a friend drive another car down to the point of return so they could come back in it. Collectively these indicia would permit not only a police officer to reasonably suspect that Tucker and his companion had engaged or were engaging in criminal activity involving drugs, but also detain them for further investigation. *See Powell v. State*, 5 S.W.3d 369, 378-79 (Tex. App.–Texarkana 1999, pet. ref'd), *cert. denied*, 529 U.S. 1116, 120 S.Ct. 1976, 146 L.Ed.2d 805 (2000) (recognizing that nervousness and the existence of prior drug offenses are factors used in assessing the existence of reasonable suspicion to believe that crime is afoot); *see also Estrada v. State*, 30 S.W.3d 599, 603 (Tex. App.–Austin 2000, pet. ref'd) (confusing and contradictory stories are facts to be considered in forming a reasonable basis for

---

[4]Appellant subsequently confirmed that he had been so arrested when he stated that he had been granted deferred adjudication for a drug-related offense.

suspecting that the defendant was smuggling drugs).[5]  At the very least, a decision of a trial court so holding would not fall outside the zone of reasonable disagreement.  And, because of that, we cannot say that the trial court erred in refusing to conclude that either the initial or continuing detention of Tucker and appellant was improper.

*Consent*

Next, appellant argued that he did not give the officer consent to search his pockets once he admitted possessing a baggie containing drugs.  We reject the proposition. Simply put, an officer may search one's person when he has probable cause to believe that the individual possesses contraband on his person.  *See e.g., Evans v. State*, 799 S.W.2d 412, 414-15 (Tex. App.—Corpus Christi 1990, no pet.).  He does not need consent under those circumstances.  And, it would not be outside the zone of reasonable disagreement for a trial court to conclude that appellant's statement that he had a baggie in his pocket (when he and the officer were discussing the presence of drugs) created probable cause warranting a search of appellant's pocket.

Appellant also suggested that his statement regarding the baggie was involuntary. This particular argument, however, is accompanied by no citation to analogous authority, as required by Texas Rule of Appellate Procedure 38.1(h).  Thus, it was waived.  Yet, even had it not, we would not find it persuasive.  This is so because the evidence of record illustrates that Johnson was simply explaining the possible legal consequences of

---

[5]This is not to say that because Tucker and appellant were simply returning from El Paso the officer had reasonable basis to suspect drug activity.  That one may be traveling from or to a city which an officer believes is a "source" for contraband carries little to no weight in assessing the existence of reasonable suspicion or probable cause.  *Veal v. State*, 28 S.W.3d 832, 837 (Tex. App.–Beaumont 2000 pet. ref'd); *Munera v. State*, 965 S.W.2d 523, 529 (Tex. App.–Houston 1997, no pet.).

discovering drugs within a car in which he sat. That does not render any ensuing response inadmissible. *Freeman v. State*, 723 S.W.2d 727, 730 (Tex. Crim. App. 1986) (holding that a statement of the status of the case in terms of the facts and law is not a coercive promise which taints the suspect's response). Nor is an officer's statement that the detainee's cooperation may help the detainee sufficient to render inadmissible the ensuing comments. *Renfro v. State*, 958 S.W.2d 880, 884 (Tex. App.—Texarkana 1997, pet. ref'd). Finally, the video of the incident illustrated that 1) the show of force by Johnson and his colleague was minimal, 2) Johnson spoke in a calm, formal tone, and 3) the lapse of time between appellant exiting the car and ultimately admitting that he possessed the baggie was a matter of a minute or two. That hardly evinced compulsion, especially when the officer was simply asking about contraband in the car and not on appellant's person. *See Smith v. State*, 60 S.W.3d 885, 889 (Tex. App.—Amarillo 2001, no pet.) (stating that the officer's interrogation must have some compelling effect before the response can be deemed the result of coercion).

*Pat-Down*

Finally, appellant argues that Johnson's search of appellant's pocket was not a lawful pat-down. This argument is of no import for the search conducted by Johnson was not a pat-down. Instead, it was a search in response to the existence of probable cause.

Accordingly, we affirm the judgment of trial court.


Per Curiam

Publish.

7