2) Caption, civil cases







COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
MARIO PRIEGO,                                            )                  No. 08-04-00314-CR
)
                                    Appellant,                        )                             Appeal from
)
v.                                                                          )                  34th District Court
)
THE STATE OF TEXAS,                                   )                  of El Paso County, Texas
)
                                    Appellee.                          )                  (TC# 20030D03772)

O P I N I O N

            Appellant, Mario Priego, appeals his conviction of possession of more than four but less 200
grams of cocaine. Following the denial of a motion to suppress, Appellant waived his right to a jury
trial and entered a negotiated plea of guilty. In accordance with the plea bargain, the court assessed
punishment at five years’ imprisonment, probated for five years, and a $2,000 fine. We affirm.
LEGALITY OF THE
DETENTION AND SEARCH

            In his sole issue for review, Appellant contends that the trial court erred in denying his
motion to suppress because his detention and search were unreasonable in violation of the Fourth
Amendment.



Standard of Review
            We review a trial court’s ruling on a motion to suppress based upon an alleged lack of
probable cause or reasonable suspicion using the bifurcated standard of review articulated in Guzman
v. State, 955 S.W.2d 85 (Tex.Crim.App. 1997). See Carmouche v. State, 10 S.W.3d 323, 327
(Tex.Crim.App. 2000); Krug v. State, 86 S.W.3d 764, 765 (Tex.App.--El Paso 2002, pet. ref’d). 
Under this standard, we afford almost total deference to the trial court’s express or implied
determination of historical facts and review de novo the court’s application of the law pertaining to
search and seizure to those facts. State v. Ross, 32 S.W.3d 853, 856 (Tex.Crim.App. 2000);
Carmouche, 10 S.W.3d at 327; Krug, 86 S.W.3d at 765. As there were no explicit findings of
historical facts by the trial court, the evidence must be viewed in a light most favorable to the trial
court’s ruling. Carmouche, 10 S.W.3d at 327.
Relevant Facts
            Guadalupe Ruiz, a detective assigned to the narcotics division of the El Paso Police
Department, received separate anonymous tips that two individuals, Appellant and Arturo Carmona,
were dealing drugs from the Off Sides Bar. The caller provided Ruiz a description of Appellant. 
Ruiz, working undercover, went into the bar on three occasions but did not find an individual
matching the description. On July 30, 2003, approximately two weeks after he first received the
anonymous tips, Ruiz and another detective returned to the Off Sides Bar. Ruiz observed an
individual, later identified as Appellant, who matched the description provided by the anonymous
tipster. A female patron walked over to Appellant and they went outside for a minute before
returning. Once back inside of the bar, the female patron and Appellant did not have any further
contact. In Ruiz’s experience, this behavior was consistent with and indicated narcotics activity. 
At this point, Ruiz called other police officers and requested that they conduct a “bar check.”             At approximately 9:20 p.m., Officer Gabriel Peralta and other police officers received a
request from the narcotics division that a bar check be conducted at the Off Sides Bar. Peralta and
the other officers, who were checking the identification of all patrons, were given instructions to look
for Appellant. Based on the information provided, Peralta located Appellant inside. Peralta asked
Appellant for a driver’s license or current ID card. When Appellant said that he did not have any
identification with him, Peralta asked Appellant his name. Appellant stated his name and showed
Peralta a piece of jewelry with his last name on it. Peralta asked Appellant to step outside because
he could not hear over the music in the bar. Once outside, Appellant complied with Peralta’s request
to provide his full name, date of birth, address, and social security number. Peralta told Appellant
that he was going to do a pat-down search and asked if Appellant had any sharp objects, weapons,
narcotics, or anything illegal that might harm or alarm him. Appellant responded that he had a
cigarette box in his pocket containing cocaine. Peralta patted down Appellant’s pocket and removed
the cigarette box, finding a diamond fold of cocaine inside. Peralta then placed Appellant under
arrest for possession of a controlled substance and advised him of his rights. Pointing to a gray
Cadillac, Appellant asked Peralta what would happen to his vehicle. Peralta told Appellant that the
car would be impounded because it could not be left at the bar and he refused Appellant’s request
to release the car to a family member. Appellant orally consented to a search of the vehicle before
it was impounded. A K-9 unit searched the car and located several bindles of cocaine. 
            Raul Bertolli was with Appellant on the night of the arrest. Uniformed police officers
approached them and asked for ID. After running a warrant check, the officers asked Appellant to
step outside. An officer returned to the table and asked Bertolli to go outside as well. The officer
asked Bertolli if he had anything illegal in his pockets, and Bertolli responded that he did not. The
officer, without asking for consent, then searched Bertolli’s pockets. Bertolli was allowed to go back
inside, but was brought outside a second time and asked how he knew Appellant. He said Appellant
was just a friend, and the officers left him outside with Appellant, who was already in handcuffs. 
Bertolli did not hear the officers ask Appellant for consent to search his car, but he admitted that it
could have occurred while he was inside the bar. Bertolli recalled that Appellant went outside with
a woman named Nancy to get change. Bertolli did not believe he was free to leave because officers
were guarding the doors.
            Appellant also testified at the suppression hearing. He arrived at the bar first and was then
joined by Armando and Raul Bertolli, as well as Nancy when she was finished bartending. One
officer came into the bar, followed by two others, but the first officer went straight to Appellant and
asked him for his ID. When Appellant said he didn’t have any ID, the officer asked him to step
outside. Once outside, the officer told him to put his hands on the wall and he searched him without
asking for consent. Appellant did not consent to the search of his person. The officer took
Appellant’s car keys and pack of cigarettes. Appellant did not tell the officer that he had cocaine in
his cigarette pack. The officer laughed when Appellant asked if he could release his car to his sister. 
Appellant did not consent to a search of his car. Appellant felt that he could not leave when the
officers asked him for ID in the bar and when they patted him down outside. 
The Initial Detention
            Appellant first argues that the officers lacked reasonable suspicion to detain him. An officer
conducts a lawful temporary detention when he has reasonable suspicion to believe that an individual
is violating the law. Ford v. State, 158 S.W.3d 488, 492 (Tex.Crim.App. 2005). Reasonable
suspicion exists if the officer has specific, articulable facts that, when combined with rational
inferences from those facts, would lead him to reasonably conclude that a particular person actually
is, has been, or soon will be engaged in criminal activity. Id. This is an objective standard that
disregards any subjective intent of the officer making the stop and looks solely to whether an
objective basis for the stop exists. Id. A reasonable-suspicion determination is made by considering
the totality of the circumstances. Id. at 492-93. When several officers are working together, the
information known collectively by all the officers is considered. Young v. State, 133 S.W.3d 839,
841 (Tex.App.--El Paso 2004, no pet.). 
            While an anonymous tip or telephone call may justify the initiation of an investigation, it
alone will rarely establish the level of suspicion required to justify a detention. Alabama v. White,
496 U.S. 325, 329, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990); Davis v. State, 989 S.W.2d 859, 863
(Tex.App.--Austin 1999, pet. ref’d). Normally, a police officer must have additional facts before the
officer may reasonably conclude that the tip is reliable and an investigatory detention is justified.
Davis, 989 S.W.2d at 863. An officer’s prior knowledge and experience and his corroboration of
the details of the tip may be considered in giving the anonymous tip the weight it deserves. Id. at
864.
            The corroboration of details that are easily obtainable at the time the information is provided
and which do not indicate criminal activity will not lend support to the tip. Id. An accurate
description of a subject’s readily observable location and appearance will help the police correctly
identify the person whom the tipster means to accuse, but it does not show that the tipster has
knowledge of concealed criminal activity. Florida v. J.L., 529 U.S. 266, 272, 120 S.Ct. 1375, 146
L.Ed.2d 254 (2000). Here, the detectives’ observation of Appellant in the Off Sides Bar did not
provide any basis for crediting the tipster’s suspicion that Appellant was dealing drugs there. But
other observations supported the tip. Ruiz observed a woman approached Appellant and went
outside with him. The woman and Appellant returned in only a minute and did not have any further
contact. In Ruiz’s experience as a narcotics detective, this behavior was consistent with what he
termed narcotics activity. Appellant’s conduct and the inferences that experienced officers could
draw from that conduct gave the officers reason to credit the anonymous tip. The totality of the
circumstances gave the officers a reasonable, articulable basis for suspecting that Appellant was
dealing drugs in the bar, and therefore, a brief investigative detention was reasonable. Officer
Peralta’s request that Appellant produce his ID was a minimally intrusive manner of further verifying
the tip. Because Appellant did not have identification and the officer had difficulty hearing
Appellant because of the music, he asked him to step outside to answer questions regarding his
identity. These actions were reasonable under the Fourth Amendment.
The Search of Appellant’s Pocket
            Appellant next contends that the pat-down search for weapons was not justified. A peace
officer who detains a person briefly for investigation may conduct a limited pat-down search of that
person if the official has a reasonable belief that the person detained poses a threat to the official’s
safety or the safety of others. Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889
(1968). Peralta, who knew Appellant was being investigated for suspected narcotics activity in the
bar, informed Appellant of his intent to conduct a pat-down search and asked whether he had any
dangerous items or contraband on his person. Appellant said “yes” and admitted to Peralta that he
had cocaine inside of a cigarette box in his pocket. At this point, Peralta had probable cause to
search Appellant’s pocket and seize the diamond fold. See Nuttall v. State, 87 S.W.3d 219, 223
(Tex.App.--Amarillo 2002, no pet.)(where defendant admitted to officer that he had baggie of drugs
on his person, probable cause existed to justify search). Thus, the search of Appellant’s person was
not conducted pursuant to a pat-down search but rather was done based on probable cause.
The Search of Appellant’s Car
            Finally, Appellant complains that he did not consent to a search of his car. The trial court
had before it conflicting evidence as to whether Appellant consented to a search of his car. The court
apparently resolved that conflict in favor of the State. Under the applicable standard of review, we
are required to give deference to the court’s determination of historical fact. A consensual search
is an exception to the requirement that a search be based upon a warrant supported by probable
cause. Rayford v. State, 125 S.W.3d 521, 528 (Tex.Crim.App. 2003); Reasor v. State, 12 S.W.3d
813, 817 (Tex.Crim.App. 2000). Even if Appellant had not consented, the search of Appellant’s car
was a valid search incident to arrest. See New York v. Belton, 453 U.S. 454, 460, 101 S.Ct. 2860,
2864, 69 L.Ed.2d 768 (1981); State v. Ballard, 987 S.W.2d 889, 892 (Tex.Crim.App.1999). We
overrule the sole issue for review and affirm the judgment of the trial court.


September 15, 2005                                                     
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Barajas, C.J., McClure, and Chew, JJ.

(Do Not Publish)