ACCEPTED
07-15-00112-CR
SEVENTH COURT OF APPEALS
AMARILLO, TEXAS
12/3/2015 2:33:56 PM
Vivian Long, Clerk

NO. 07-15-00112-CR

STATE REQUESTS
ORAL ARGUMENT
ONLY IF APPELLANT
REQUESTS ARGUMENT

FILED IN
7th COURT OF APPEALS
AMARILLO, TEXAS
12/3/2015 2:33:56 PM
VIVIAN LONG
CLERK

IN THE

COURT OF APPEALS

FOR THE

SEVENTH JUDICIAL DISTRICT OF TEXAS

AMARILLO, TEXAS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

DANIEL ORES PULVER,
                        APPELLANT,

VS.

THE STATE OF TEXAS,
                        APPELLEE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ON APPEAL FROM THE 222ND DISTRICT COURT
CAUSE NO. OCR-141-065
OLDHAM COUNTY, TEXAS
HONORABLE ROLAND D. SAUL, PRESIDING

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

STATE'S BRIEF

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

KENT BIRDSONG
OLDHAM COUNTY ATTORNEY
SBN 02333630
P.O. BOX 698
VEGA, TEXAS  79062
(806) 267-2233
Kent.Birdsong@oldham-county.org

ATTORNEY FOR THE STATE

i

# TABLE OF CONTENTS

PAGE

TABLE OF CONTENTS…………………………………………………………ii

LIST OF AUTHORITIES…………………………………………………....  iv

THE CASE IN BRIEF……………………………………………………......…1

STATEMENT OF THE CASE…………………………………………………….2

STATE'S RESPONSIVE POINTS…………………………………….  3

RESPONSIVE POINT ONE (ADDRESSED TO APPELLANT'S "ISSUE ONE"):

The trial court correctly denied appellant's motion to suppress evidence seized at the scene of a traffic stop.

RESPONSIVE POINT TWO (ADDRESSED TO APPELLANT'S "ISSUE TWO"):

Indistinct evidence appellant had previous drug offense arrests  was relevant to explain the arresting trooper's reasonable suspicion at the traffic stop scene, given appellant's untruthfulness about his arrest record; no error attaches to the admission of the evidence.

RESPONSIVE POINT THREE (ADDRESSED TO APPELLANT'S "ISSUE THREE"):

The State acknowledges the judgement, if necessary, should be modified to remove any requirement appellant pay court-appointed attorney fees.

FACT STATEMENT …………………………………………. 4

RESPONSIVE POINT ONE RESTATED………………………… 11

RESPONSIVE POINT TWO RESTATED………………………… 21

RESPONSIVE POINT THREE RESTATED …………………. 27

CONCLUSION AND PRAYER………………………………… 29

CERTIFICATE OF SERVICE…………………………………… 30

CERTIFICATE OF COMPLIANCE………………………………… 30

# LIST OF AUTHORITIES

Page

Cases

*Berkemer v.McCarty*,  468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984)    14

*Crockett v. State*,  803 S.W.2d 308-11 (Tex.Crim.App. 1991.) .......................... 16

*Davis v. State*,  947  S.W.2d. 240, 245 n. 6 (Tex.Crim.App.1997)  ...................... 15

*Denmon v. State*,  No. 03-12-00347-CR, 2014  WL 857671(Tex.App. - - Austin Aug. 20, 2014, pet. ref'd.)(memorandum opinion not designated for publication)   26

*Estrada v. State*,  30 S.W.3d 599, 603(Tex.App. - - Austin 2000, pet. ref'd)   14, 15, 16, 18, 20

*Florida v. Royer*,  460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983)..    14

*Green v. State*,  93 S.W.3d 541, 547 (Tex.App. - - Texarkana 2002, pet. ref''d)    18

*Greene v. State*,  287 S.W.3d 277, 281(Tex.App. - - Eastland 2009, pet. ref'd)   24

*Hamal v. State*,  390 S.W.3d 302, 307-08 (Tex.Crim.App. 2012.) ...............    18, 25

*Hughes v. State*,  334 S.W.3d 379, 383 (Tex.App. - - Amarillo 2011, no pet.) ..    13

*Josey v. State*,  981 S.W.2d 831, 841 (Tex.App. - - Houston [14[th] Dist.] 1998, pet. ref'd.)................................................................................................ 19, 20

*Matthews v. State*,  431 S.W.3d 596, 602-03 (TexCrim.App. 2014)............    15, 16

*Mayer v. State*,  309 S.W.3d 552, 557 (Tex.Crim.App. 2010) ......................    27, 28

*Montgomery v. State*,  810 S.W.2d 372, 391-92 (Tex.Crim.App. 1991).............    13

*Motilla v. State*,  78 S.W.3d 352, 355 (Tex.Crim.App. 2002)............................    24

*Nuttall v. State*,  87 S.W.3d 219, 222 (Tex.App. - - Amarillo 2002, no pet.)    15, 18

*Orean v. State*,  201 S.W.3d 724, 726 (Tex.Crim.App. 2002) ...........................    24

*Parker v. State*,  297 S.W.3d 803, 811 (Tex.App. - - Eastland 2009, pet. ref'd)    18, 19

*Romero v. State*,  800 S.W.2d 539, 543 (Tex.Crim.App. 1990).........................    13

*Sanders  v. State*,  255 S.W.3d 754, 760 (Tex.App. - - Fort Worth 2008, pet. ref'd)25

*Spight v. State*, 76 S.W.3d 761, 766 (Tex.App. - - Houston [1st Dist.] 2002, no pet)   14

*State v. Dixon*, 206 S.W.3d 587, 590 (Tex.Crim.App. 2006).....................   13, 14

*State v.Ross*, 32 S.W.3d 853, 856 (Tex.Crim.App. 2000) ..................................   14

*State v. Story* 445 S.W.3d 729, 732 (Tex.Crim.App. 2014) ...............................   13

*Strauss v. State*, 121S.W.3d 486, 491 (Tex.App. - - Amarillo 2003, pet. ref'd.)   14

*Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ........   15

*United States v. Sharpe*, 470 U.S. 675, 686, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985) ................................................................................................   15, 19

*Valtierra v. State*, 310 S.W.3d 442, 447 (Tex.Crim.App. 2010).......................   13

*Zuliani v. State*, 97 S.W.3d 589, 595 (Tex.Crim.App. 1995).............................   24

Statutes

Tex. Health & Safety Code Ann. Sec. 481.115 (f)(West. 2010) ...............................2

Tex. Code Crim. Proc. Ann. Art. 26.05 (g)(West. Supp. 2015) ..............................28

Rules

Tex.R.Evid. 403 .................................................................................................23, 25

Tex.R.App.P. 44.2 (b) ............................................................................................24

NOS. 07-15-00112-CR

IN THE

COURT OF APPEALS

FOR THE

SEVENTH JUDICIAL DISTRICT OF TEXAS

AMARILLO, TEXAS

*****************************************************************

DANIEL ORES PULVER,
Appellant,

VS.

THE STATE OF TEXAS,
Appellee.

*****************************************************************

TO THE HONORABLE COURT OF APPEALS:

COMES NOW the State of Texas, appellee in the above entitled and numbered appeal, by and through its Oldham County Attorney, and submits its brief in response to the brief of appellant, Daniel Ores Pulver. Appellant was convicted in the 222nd Judicial District Court of Oldham County, Texas of possession of a controlled substance, heroin, in an amount 400 grams or more; punishment was enhanced by proof of appellant's previous felony conviction.

## STATEMENT OF THE CASE

Appellant Daniel Ores Pulver appeals his conviction for possession of a controlled substance, heroin, in an amount 400 grams or more. *See* Tex. Health & Safety Code Ann Sec. 481.115(f) (West 2010). By his three "Issues Presented," he asserts the trial court erred in: not granting his pretrial motion to suppress as evidence the contraband forming the basis of the prosecution; allowing evidence of his prior criminal record at the guilt-innocence phase; and, including in its judgment an order he pay appointed attorney fees.

The Oldham County grand jury on September 17, 2014 indicted appellant for the offense, which was alleged to have occurred on or about March 12, 2012. *CR: 6.* Included in the indictment was a punishment-enhancing allegation appellant had previously been convicted of a felony.

Appellant filed a motion to suppress as evidence the contraband made the subject of the prosecution. *CR: 10.* After a hearing, the trial court denied the suppression motion. Thereafter, a jury convicted appellant of the indicted offense. Following a trial of the punishment issue, the jury assessed appellant's punishment at 70 years imprisonment and a $70,000 fine; the court on March 5, 2015 imposed sentence accordingly. *CR: 99.* Appellant timely, on March 11, 2015, filed a notice of appeal. *CR: 95.*

**STATE'S RESPONSIVE POINTS**


RESPONSIVE POINT ONE (ADDRESSED TO APPELLANT'S "ISSUE ONE"):


      The trial court correctly denied appellant's motion to suppress evidence seized at the scene of a traffic stop.


RESPONSIVE POINT TWO (ADDRESSED TO APPELLANT'S "ISSUE TWO"):


      Indistinct evidence appellant had previous drug offense arrests was relevant to explain the arresting trooper's reasonable suspicion at the traffic stop scene, given appellant's untruthfulness about his arrest record; no error attaches to the admission of the evidence.


RESPONSIVE POINT THREE (ADDRESSED TO APPELLANT'S "ISSUE THREE"):


      The State acknowledges the judgement, if necessary, should be modified to remove any requirement appellant pay court-appointed attorney fees.

# FACT STATEMENT

## *Suppression Hearing*

The heroin appellant was prosecuted for possessing was seized in a search of appellant's automobile following a March 22, 2012 traffic stop. Appellant filed a motion to suppress as evidence the heroin seized; the essence of appellant's grievance in the suppression motion was that the length of the stop leading to the search was unreasonable. *CR: 10.* Hearing on the suppression motion was had on December 16, 2014. In support of the seizure, the State presented testimony of two Texas Department of Public Safety ("DPS") troopers involved in the search. Central to the issue on appeal is the testimony of the arresting trooper, Paul Weller.

About 5:17 p.m. March 22, 2012, Weller, on his patrol car radar, detected an eastbound vehicle being driven 78 m.p.h. in a 75 m.p.h. zone on Interstate 40. *RR2: 7, 20.* Weller activated the patrol car's overhead lights, and pursued the vehicle; its driver pulled to the side of the highway at about the mile 29 marker. *RR2: 7.* Through the vehicle's passenger side window, Weller asked the driver, appellant, for his driver's license and the rental agreement for the vehicle; appellant provided those documents. *RR2: 8.* Weller told appellant he was going to give appellant a warning ticket for the speeding infraction, and asked appellant to accompany him to the patrol car; as Weller directed, appellant sat on the patrol car's front passenger seat. *RR2: 9.*

4

In the patrol car, appellant was "extremely nervous," exhibiting "real heavy, shallow breathing." *RR2: 10*. Appellant avoided eye contact with Weller, and was unsure in answering some of Weller's questions; when appellant had to think about a response to Weller's questions, he "was just stammering over himself." *RR2: 10, 38*. Weller asked appellant where appellant and his passenger were traveling to; appellant replied, "a concert." *RR2: 10*. When Weller asked where the concert was to be, appellant hesitated for a time before answering; finally, appellant replied, "Chicago;" according to appellant, the concert was to be two days later, March 24. *RR2: 10, 11*. Appellant could not immediately identify who was performing at the concert. He described the performer as "the old guy with glasses . . the gay guy." Appellant answered in the affirmative Weller's query whether appellant was referring to the singer Elton John. *RR2: 11*.

On his cell phone with internet capability, Weller checked to see if indeed Elton John indeed was performing in Chicago on March 24. *R2: 11*. Weller learned that Elton John was not going to perform in Chicago; instead, he would be performing in Grand Forks, North Dakota on March 24. *RR2: 11*.

When Weller asked about appellant's criminal history, appellant said he had convictions for DUI and domestic assault. *RR2: 13*. Weller did a computer check and learned that appellant had arrests for at least two drug possession cases he had not mentioned. *RR2: 13*.

After inquiring about appellant's criminal history, Weller went back to the stopped vehicle and spoke with the passenger, Brandi Grammer. Grammer confirmed she and appellant were en route to Chicago for an Elton John concert. *RR2: 15*. She and appellant had traveled to the Los Angeles area, Grammer explained. *RR2: 16.* Grammer said she did not know where they were, *i.e.,* what state they were in. *RR2: 16*.

By this point in the interaction, Weller's suspicions were aroused about the travelers' involvement in ongoing criminal activity. *RR2: 16*. Proceeding back to the patrol car, Weller asked appellant where the trip had originated; appellant indicated they had begun the trip in Jerome, Idaho. *RR2: 16.*

Appellant said he and Grammer had planned to drive to the Pacific Coast, but at Riverside or Chino, California, decided the ocean was "too far." *RR2: 16-17*. Weller knew that the Pacific Ocean was only about 50 minutes driving distance from Chino or Riverside. *RR2: 17.* To Weller, appellant and Grammer's itinerary did not make sense: the purported purpose of their trip was to see Elton John in concert in Chicago, but Elton John was not going to be in Chicago; and, they professed an intention to travel to the Pacific Ocean, but, within 50 minutes of it, they decided that trip was too far. *RR2: 27-28*.

Weller asked appellant whether anything illegal was in the car. Following up, Weller specifically asked whether marijuana, cocaine, methamphetamine, prohibited weapons, or a large sum of cash were in the car; to all questions, appellant responded, "No." *RR2: 17, 18, 19.* Weller then asked whether he, Weller, could search the car; Weller's request to search was made 11 minutes after the traffic stop had been effected. *RR2: 22.* Appellant asked why Weller wanted to search it; Weller answered he wanted to search because he thought appellant was "hauling contraband." *RR2: 19*. Appellant told Weller "he was kind of in a hurry." *RR2: 20*. Weller regarded that response as a refusal, and told appellant he was going to call for a canine. *RR2: 20*.

When Weller said he would call for a dog, appellant countermanded his earlier hesitant response and told Weller he would agree to the search. *RR2: 20.* Weller's protocol was, when a suspect refused a search he would call for a drug dog, regardless of whether the suspect then agrees to the search; he took that position, Weller explained, to avoid any suggestion of coercion in the suspect's acquiescing to the search. *RR2: 20.*

Weller contacted the DPS communications office in Amarillo to ask for a canine; he was told no canines were available. *RR2: 22.* He then contacted the Oldham County Sheriff's Office, and again learned that no canine was then available. *RR2: 22*. Weller contacted the Deaf Smith County Sheriff's Office;

7

once again he was told no dog was available. *RR2: 23*. Having several times been unsuccessful in obtaining a dog, Weller again called the DPS communications office in Amarillo and solicited its help in securing one. *RR2: 24*. Twenty-four minutes into the stop, someone from the DPS communications office contacted Weller and related that a deputy with a dog was en route from the Randall County Sheriff's Office. *RR2: 24.* From a distance Weller estimated at 50 miles, a deputy and dog, traveling at a high rate of speed, arrived at the scene about 25 minutes later, at about 6:10 p.m. *RR2: 24-25*.

When the drug-sniffing dog was led around the vehicle, it "alerted," signaling its detection of drugs. *RR2: 26*. Recovered from the vehicle, inside the passenger right side rear door panel, in the ensuing search were 4 bundles of heroin. *RR2: 26*. Appellant and Grammer were arrested at the scene. Grammer soon was released after law enforcement investigators were satisfied she had no involvement with the heroin. *RR2: 41* After the presentation of evidence, the trial court denied the suppression motion. *RR2: 63*. The search was lawful, given the totality of the circumstances and appellant's consent to the search, the court concluded. *RR2: 63; CR: 52.*

## B. Trial on the Merits

Before the jury, the prosecutor presented evidence about the traffic stop of appellant, the search, and arrest, which was substantially the same as was presented at the suppression hearing. Beyond urging that the contraband seized should have been suppressed as evidence, appellant does not contest the sufficiency of the evidence supporting his conviction. In the interest of brevity, the State will here present only a bare narrative of those trial facts useful for an overview of the offense's nature.

Margie Robinson, a forensic scientist with the DPS Regional Crime Laboratory in Amarillo, testified that the contraband seized from appellant's car weighed 2.67 kilograms, or 2,670 grams. *RR5: 55*. That weight equates to about 5.85 pounds, Robison noted. *RR5: 55.* The substance comprising the exhibit seized, Robison related, contained 69% heroin. *RR5: 57.*

DPS criminal investigation agent Brian Frick testified to his interview of appellant following appellant's arrest. When a suspected drug courier is apprehended, DPS agents, in appropriate circumstances, attempt to enlist the suspect in a "controlled delivery," Frick explained. *RR5: 111.* The goal, Frick related, is to accompany the cooperating suspect to the suspect's destination; there, without compromising the suspect, the DPS agent works with law enforcement

9

persons in that jurisdiction to obtain necessary search warrants and make arrests and seizures of even more drugs. *R5: 112*.

Frick and another agent were unable to gain appellant's cooperation for a controlled delivery. But, in the recorded interview, appellant told the agents details about the delivery appellant was attempting when arrested. Grammer rented the car, appellant noted. *RR5: 122*. The drug run itself began in a hotel near Indio, California; he was to be paid $1500 for delivering the drugs and received $800 "front money," appellant told the agents. *RR5: 120, 125*. To practice for the delivery, appellant explained, he earlier did a "dry run" drive, without drugs, from Indio to Chicago. *RR5: 124*. Appellant told the agents he had dealt with the persons in Jerome, Idaho who had involved him in drug trafficking "a fairly long time." *R5: 124*.

Appellant did not testify. In his behalf, he presented testimony from the two troopers involved in the search of the car, Weller and Brandon Riefers. In the prosecutor's cross-examination, Riefers quantified the street value of 2,670 grams of heroin at $757,472.34. *RR5: 137*.

**RESPONSIVE POINT ONE (ADDRESSED TO APPELLANT'S "ISSUE ONE")(RESTATED):**

The trial court correctly denied appellant's motion to suppress evidence seized at the scene of a traffic stop.

### *I.     The Error Appellant Sees in the Trial Court's Denial of his Suppression Motion*

The length of Trooper Weller's stop of him was unreasonable; the trial court erred in upholding the detention of him and search of his automobile, appellant asserts. In that connection, appellant urges, the circumstances of the traffic stop did not lend reasonable suspicion of criminal activity to justify Weller's detention of him pending the arrival of a drug-sniffing dog. Specifically, says appellant: he was cooperative with the trooper; he had a valid driver's license and car rental agreement; his description of the trip itinerary was matched by that of the passenger, Brandi Grammer; no outward indication of concealed contraband was present; and, neither appellant nor passenger Grammer had outstanding arrest warrants. *Brief of Appellant*, pp. 21-23. The harm from denial of the suppression motion and receipt of evidence of the contraband is seen in his conviction and the harsh punishment assessed, appellant argues. *Brief of Appellant,* p. 24.

## II.    *Summary of the State's Response*

Trooper Weller pointed to articulable facts and circumstances at the scene causing him to reasonably suspect appellant was engaged in transporting contraband: appellant's explanation of the route he was taking from the point of origin to the destination defied logic; appellant was extremely nervous in interacting with Weller, even after Weller told him was getting  only a warning ticket for the traffic infraction; appellant spent an inordinate amount of time in answering uncomfortable questions, stammering as he did so; appellant was untruthful in relating his criminal history, pointedly omitting mention of his previous drug cases; and, Weller exposed as fictitious the supposed concert appellant said he was going to Chicago to attend.

Upon his observations, Weller could reasonably hold appellant in place pending the arrival of a K-9 unit to conduct a free-air drug sniff search.  Weller and other law enforcement officers were confronted with limited availability of a canine in the area; the other officers responded as expeditiously as possible to send a K-9 unit to the remote scene of the traffic stop. Under those circumstances, viewed in light of appellant's consent to the search, the 55-minute duration of the stop and search was reasonable. The trial court correctly denied appellant's suppression motion.

### III. *Argument and Authority*

#### A. *Standard of Review*

An appellate court should review a trial court's ruling on a motion to suppress for an abuse of discretion. *State v. Story*, 445 S.W.3d 729, 732 (Tex.Crim.App. 2014); *State v. Dixon*, 206 S.W.3d 587, 590 (Tex.Crim.App. 2006). The record should be reviewed in the light most favorable to the trial court's determination, and the judgment should be reversed only if it is arbitrary, unreasonable or 'outside the zone of reasonable disagreement.' *Story*, 445 S.W.3d at 732, *citing Montgomery v. State*, 810 S.W.2d 372, 391-92 (Tex.Crim.App. 1991).

The reviewing court should uphold the judgment if it is correct on some theory of the law applicable to the case, even if the trial judge made the judgment for a wrong reason. *Story*, 445 S.W.3d at 732, *citing Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App. 1990). The trial judge is the sole trier of fact and judge of the credibility of any witness's testimony and the weight to be assigned to that testimony. *Hughes v. State*, 334 S.W.3d 379, 383 (Tex.App. - - Amarillo 2011, no pet.), *citing Valtierra v. State*, 310 S.W.3d 442, 447 (Tex.Crim.App. 2010). Because the trial court is the sole trier of fact, the appellate court should give almost total deference to the trial court's determination of historical facts. *Story*,

445 S.W.3d at 732, *citing State v. Dixon, supra*, 206 S.W.3d at 590. The trial court's application of the law to those facts is reviewed *de novo*. *State v. Ross*, 32 S.W.3d 853, 856 (Tex.Crim.App. 2000).

### B. The Trial Court's Denial of Appellant's Motion to Suppress Evidence Was a Correct Application of the Law to the Facts

Appellant does not question the legality of Trooper Weller's traffic stop of him for speeding. *Brief of Appellant*, p. 20. Instead, appellant centers his appeal on the continued detention of him beyond the time reasonably required for Weller to write a warning; that prolonged detention to await arrival of a K-9 unit constituted a Constitutional deprivation of right, he contends.

A traffic stop is analogous to a temporary investigative detention. *Estrada v. State*, 30 S.W.3d 599, 603 (Tex.App. - - Austin 2000, pet. ref'd), *citing Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). Such a detention may last no longer than is necessary to effectuate the purpose of the stop. *Id.*, *citing Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). An officer is nonetheless entitled to conduct a brief and minimally intrusive investigation. The office may require the driver to identify himself and produce  a valid driver's license  and proof of insurance. *Strauss v. State*, 121 S.W.3d 486, 491 (Tex.App. - - Amarillo 2003, pet. ref'd), *citing Spight v. State*, 76 S.W.3d 761, 766 (Tex.App. - - Houston [1[st] Dist.] 2002, no pet.].  Similarly, the

officer may check for outstanding warrants, ask about the driver's destination and purpose in travelling, and direct the driver to exit the vehicle. *Id*., *citing Davis v. State*, 947 S.W.2d 240, 245, n.6 (Tex.Crim.App. 1997), *Nuttall v. State*, 87 S.W.3d 219, 222 (Tex.App. - - Amarillo 2002, no pet.) and *Estrada v. State, supra,* 30 S.W.3d at 603.

Under the Fourth Amendment, a brief investigatory detention must be justified by reasonable suspicion. A police officer has reasonable suspicion to detain if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity. *Matthews v. State*, 431 S.W.3d 596, 602-03 (Tex.Crim.App. 2014), *citing Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The investigatory detention must be 'reasonably related in scope to the circumstances which justified the interference in the first place.' *Matthews,*431 S.W.3d at 603, *citing Davis v. State*, *supra,* 947 S.W.2d at 242. In assessing whether a detention is too long in duration to be justified as an investigative stop, the reviewing court should examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly. *United States v. Sharpe*, 470 U.S. 675, 686, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985).

If the officer has a reasonable suspicion that the automobile contains narcotics, he may temporarily detain the occupants to allow an olfactory inspection by a trained police dog. *Estrada v. State, supra,* 30 S.W.3d at 603, *citing Crockett v. State*, 803 S.W.2d 308-11 (Tex.Crim.App. 1991). The "reasonableness" of a traffic stop detention involving suspicion of drug trafficking was analyzed by the *Matthews* court in this language:

> An officer must act to confirm or dispel his suspicions quickly. But the temporary detention may continue for a reasonable period of time until the officers have confirmed or dispelled their original suspicion of criminal activity. One reasonable method of confirming or dispelling the reasonable suspicion that a vehicle contains drugs is to have a trained drug dog perform an 'open air' search by walking around the car. If the dog alerts, the presence of drugs is confirmed, and police may make a warrantless search. If the drug dog does not alert, the officer's suspicions will normally have been dispelled, and the citizen may go on his way.

431 S.W.3d at 603.

Here, Trooper Weller, who effected the traffic stop, pointed to these articulable facts and circumstances as justifying his suspicion appellant was engaging in criminal activity:

- Appellant was "extremely nervous," exhibiting shallow breathing and shaking hands, even after being told he was merely getting a warning ticket for the traffic infraction; Appellant stumbled over words, and took an unusual time in answering routine questions which appellant perceived as disconcerting;

- Appellant said he and his passenger were travelling to Chicago for a March 24 concert, but he could not identify who was to be performing in concert until Weller suggested the performer, Elton John;

- From a quick computer check, Weller exposed as false appellant's avowed purpose for the trip; Elton John was performing in Grand Forks, North Dakota, not Chicago, on March 24.

- The circuitous route of the trip, as described by appellant, was illogical; the trip originated in Jerome, Idaho, proceeded to the Las Angeles area with the ostensible interim destination of the Pacific Coast; despite being within 50 minutes' drive from the Pacific, appellant decided the coast was "too far"; after a stop in Las Vegas

at some point in the journey, appellant ended up in Oldham County, en route to Chicago, when he was stopped; and,

- Appellant was untruthful in relating his arrest record to Weller; specifically, appellant omitted any mention of his drug arrests.

Weller was authorized, consistent with Fourth Amendment parameters, to detain appellant beyond the initial purpose of the traffic stop. *See and compare Hamal v. State*, 390 S.W.3d 302, 307-08 (Tex.Crim.App. 2012)(reasons justifying the extended detention included the driver's nervousness and misrepresentation of her criminal history); *Parker v. State*, 297 S.W.3d 803, 811 (Tex.App. - - Eastland 2009, pet. ref'd)(circumstances justifying continued detention after traffic stop included: the defendant's eating a hamburger while trooper questioned him; defendant's [the passenger] and driver's criminal histories; defendant's nervousness, and defendant's and driver's discrepancies about duration of their stay in California); *Green v. State*, 93 S.W.3d 541, 547 (Tex.App. - - Texarkana 2002, pet. ref'd)( driver's detention based on her nervousness, and smell of alcohol, which sometimes is used to mask odor of drugs in vehicle); *Nuttall v. State*, *supra*, 87 S.W.3d at 222-23 (driver and the defendant, in separate vehicles traveling together were involved in a curious, seemingly unnecessary round-trip journey between Lubbock and El Paso in a rental car; the defendant was nervous and evasive; and he and/or the other party had previously been arrested for drug

offenses); and, *Estrada v. State*, 30 S.W.3d at 603 (defendant and passenger were very nervous and gave confusing accounts of their trip's origin and destination).

Weller detained appellant, upon reasonable suspicion of wrongdoing, and promptly undertook to secure a trained drug-detecting dog to confirm or dispel his suspicion. He contacted the DPS communications headquarters in Amarillo, the Oldham County Sheriff's Office, and the Deaf Smith County Sheriff's Office, to no avail in obtaining an available dog. After again asking the DPS office for assistance, he was informed a K-9 unit was en route from the Randall County Sheriff's Office, Driving to scene from perhaps 50 miles away at high speed the K-9 unit arrived after about 25 minutes.

Weller's immediate and persistent efforts to get a dog on the scene satisfied the requirement of a diligent pursuit of "a means of investigation that was likely to confirm or dispel his suspicions quickly," as specified in *United States v. Sharpe, supra*, 470 U.S. at 686, 105 S.Ct. 1568. *See e.g, Parker v. State, supra*, 297 S.W.3d at 812 (drug dog, summoned from 30 or 40 minutes from the scene, alerted 70 minutes after Trooper discovered motorists' criminal histories); *Strauss v. State, supra*, 121 S.W.3d at 492 (75-minute time lapse between traffic stop and drug dog's arrival was not unreasonable); and *Josey v. State*, 981 S.W.2d 831, 841 (Tex.App. - - Houston [14th Dist.] 1998, pet. ref'd)( 90-minute duration of

19

investigatory detention, from traffic stop to arrest after drug dog alert, was not unreasonable).

Notably in that connection, appellant consented to the search after Weller indicated he would summon a K-9 unit. Weller insisted on securing a drug dog only to foreclose any possible appearance of coercion, in light of appellant's initial hesitancy about the requested search. Weller's extra caution underscores the search's reasonableness. *See Estrada v. State, supra,* 30 S.W.3d at 602 (defendant consented to search of automobile; drug dog arrived about 20 minutes after the stop, and alerted about 30 minutes into the stop).

The trial court's denial of appellant's motion to suppress evidence was not an abuse of discretion. The Court should uphold the trial court's ruling.

Indistinct evidence appellant had a criminal history was relevant to explain the arresting trooper's reasonable suspicion at the traffic stop scene, given appellant's untruthfulness about his arrest record; no error attaches to the admission of the evidence.

## *I.  Background*

Before the jury at the guilt-innocence phase, Trooper Weller related his interaction with appellant at the traffic stop scene, after Weller asked appellant to be seated in the patrol car. As the prosecutor questioned Weller, the following exchanges occurred:

Q.  What else did you talk to the Defendant about?

A.  I asked them where they were going. He informed me that they were going to a concert in Chicago. And then I asked about where they came from. He informed me they were coming from Jerome, Idaho.

 And then I believe I asked him about his criminal history and his driver's license history, if it had ever been suspended or revoked for any reason and then if he had ever been arrested before.

Q. And while you were asking him these questions, were you able to look at your in-car computer?

A. Yes, whenever I sat down in the patrol car. When I'm talking to them, I'm also typing in the driver's license number and - - running the criminal history as I'm speaking with them.

Q. So you can compare their answers to what you're reading on the computer screen?

A. Yes, I can.

Q. And did that cause you any concern?

A. When I ran the criminal history, he informed me that he'd been arrested for, I believe, a DUI and an assault or a battery, *but there was some other drug offense that - - that he did not mention.*

MR. DENHAM [Appellant's trial counsel]: Objection your honor. It's prejudicial, Your Honor. It has no materiality as to the charge today, Your Honor.

THE COURT: Well, that's overruled. I think he's explained that.

*RR4: 82-83.*

## II. Appellant's Complaint

The highlighted portion of Weller's testimony was objectionable, appellant contends, as presenting evidence of other wrongs or crimes he committed beyond the offense on trial. Before allowing that evidence, the trial court should have conducted the balancing test prescribed in Rule 403 of our evidentiary rules, appellant maintains; that is, the court should have determined whether the evidence's probative value outweighed its prejudicial potential. *Brief of Appellant*, pp. 24-25.

## III. Summary of the State's Response

The contextual purpose of the evidence's proffer was obvious: to explain one of the reasons Weller developed suspicion appellant was engaged in wrongdoing. The reference was vague and generalized; no elaboration of appellant's prior drug arrests occurred. No evidence was presented at that stage of the trial appellant had ever been convicted of a drug offense.

Appellant did not ask for a limiting instruction that evidence of his previous drug arrests be considered only to help explain his detention at the scene. Given the setting in which the reference to appellant's non-descript drug arrests was made, the jury reasonably would have considered it only as bearing on Weller's

suspicion. The prosecutor did not mention the evidence in his jury argument; no harm is shown.

### IV.  *Argument and Authority*

#### A.  *Standard of Review*

An appellate court should review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Greene v. State*, 287 S.W.3d 277, 281 (Tex.App. - - Eastland 2009, pet. ref'd)*, citing Orean v. State*, 201 S.W.3d 724, 726 (Tex.Crim.App. 2006). The trial court's ruling should not be reversed unless that ruling falls outside the zone of reasonable disagreement. *Greene v. State*, *supra*, 287 S.W.3d at 282, *citing Zuliani v. State*, 97 S.W.3d 589, 595 (Tex.Crim.App. 2003).  To obtain a reversal based on error in the admission of evidence, an appellant must show that the trial court's ruling was erroneous and that the error affected his substantial rights. *Id.;* Tex.R.App.P. 44.2 (b). Substantial rights are not affected by the erroneous admission of evidence 'if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect.' *Id. quoting Motilla v. State*, 78 S.W.3d 352, 355 (Tex.Crim.App. 2002).

*B. Evidence Appellant Had Drug Arrests He Had Not Disclosed*
*Was Admissible to Explain a Reason Trooper Weller Detained*
*Him at the Traffic Stop Scene*

At least one instance in which evidence a suspect's untruth in reporting criminal history contributed to an officer's suspicion in a traffic stop was before the jury at the guilt-innocence phase is seen in the appellate decisions. *See, e.g., Hamal v. State*, *supra*, 390 S.W.3d at 306-07. This writer has found no decision in a drug case in which the admission of such evidence was the specific subject of a complaint on appeal.

As the State understands appellant's grievance here, he is not contending that the evidence appellant concealed a history of drug offense arrests was *per se* inadmissible as extraneous misconduct evidence. Instead, he faults the trial court for not conducting a proper "probative vs. prejudicial" balancing analysis under evidentiary rule 403.

In overruling a Rule 403 objection, the trial court is assumed to have applied a balancing test and determined the evidence was admissible. The trial court need not perform the balancing test on the record. *Sanders v. State*, 255 S.W.3d 754, 760 (Tex.App. - - Fort Worth 2008, pet. ref'd).

Implicit in the trial court's overruling of appellant's objection was that the court deemed the evidence more probative than prejudicial. In that assessment, the

court was correct. Weller's testimony was important to set a context for appellant's arrest for possession of the heroin: appellant's evasive omission of his drug arrests in relating his criminal history to Weller was a significant factor in Weller's suspicion underlying the detention of appellant. As such, it was properly admitted. *See and compare*, *Greene v. State*, *supra.* 287 S.W.3d at 282-84 (evidence sexual assault of a child defendant had earlier been arrested for possession of child pornography was relevant to show how he became a suspect; the evidence was more probative than prejudicial); and, *Denmon v. State*, No. 03-12-00347-CR, 2014 WL 857671 (Tex.App. - - Austin Aug. 20, 2014, pet. ref'd)(memorandum opinion not designated for publication)( evidence indecent exposure defendant had been previously investigated for the same type of offense was admissible to explain the course of the detective's investigation and why the investigation focused on defendant; it was more probative than prejudicial).

When Weller gave the objected-to testimony, appellant requested no limiting instruction. Given its vagueness and the limited context in which it was offered, the evidence was relatively innocuous. The court did not abuse its discretion in allowing the testimony.

**RESPONSIVE POINT THREE**
**(ADDRESSED TO APPELLANT'S "ISSUE THREE"(RESTATED):**

The State acknowledges the judgment, if necessary, should be modified to remove any requirement appellant pay court-appointed attorney fees.

## I.    *Underlying Facts*

As appellant points out, a handwritten notation was added to the bill of costs denoting the sum of $2,397.00 as the apparent court-appointed attorney's fee. *CR: 101.*

## II.    *The Relief Appellant Seeks*

He was indigent throughout all stages of this case, appellant declares. Citing the *Mayer v. State,* 309 S.W.3d 552, 557 (Tex.Crim.App. 2010) decision, assessment of appointed attorney's fees against him is improper in the circumstances here, appellant asserts. *Brief of Appellant,* pp. 26-27.

### III. The State's Response

The source of the handwritten addition of $2,397.00 to the bill of costs is unknown. If indeed appellant is thereby ordered to pay the $2,397.00 as appointed attorney's fees, the State agrees it should be deleted.

A trial court may not order reimbursement of appointed attorney's fees without record evidence demonstrating a defendant's ability to pay them. Tex. Code Crim. Proc. Ann. Art. 26.05 (g)(West Supp. 2015); *Mayer v. State*, supra. No such evidence was presented here. If such action is necessary, the judgment should be modified to eliminate any order occasioned by the handwritten notation that appellant pay appointed attorney's fees.

## CONCLUSION AND PRAYER

WHEREFORE, the State prays that the judgment of conviction be affirmed in all things, excepting any necessary modification to remove any order appellant pay appointed attorney's fees.

Respectfully submitted,

KENT BIRDSONG
Oldham County Attorney
Oldham County, Texas


__/s/ Kent Birdsong___


Kent Birdsong
Oldham County Attorney
P.O. Box 698
Vega, Texas 79062
(806) 267-2233
SBN 02333630
Kent.Birdsong@oldham-county.org

Attorney for the State

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd          day of December, 2015 a true copy of the foregoing State's brief was served on appellant's attorney, W. Brooks Barfield, Jr., at P.O. Box 308, Amarillo, Texas 79105, by depositing the same in the United States Mail, postage prepaid.

__/s/ Kent Birdsong___
Oldham County Attorney


## CERTIFICATE OF COMPLIANCE

In accordance with Tex.R.App. 9.4 (i)(3), I hereby certify that the foregoing brief contains, as reflected in the computer word count, 6,153 words. That count includes word in portions of the brief which, under the Rule, are excluded from the prescribed word limit. The brief is printed in 14-point typeface.

__/s/ Kent Birdsong___
Oldham County Attorney